## ILLINOIS CENTRAL RAILROAD COMPANY v. A. F. MINOR.

1. APPEAL. *Third new trial. Special bill of exceptions necessary.*

   A party having secured two new trials, cannot appeal on a general bill of exceptions taken on a motion for a third new trial, but only on special bills of exceptions taken during the progress of the trial. *Strickland* v. *Hudson,* 55 Miss., 235; *Bowers* v. *Ross, Ib.,* 213.

2. RAILROADS. *Assault by fellow-passenger. Liability of carrier.*

   Where a railroad company negligently fails in its duty to preserve order and protect a peaceable passenger on one of its trains against riotous and disorderly fellow-passengers, and such passenger is wounded by the careless discharge of a pistol in the hands of one of the turbulent fellow-passengers, it is liable for the injury. The case of *Railroad Company* v. *Burke,* 53 Miss., 200, is again examined, and, under the doctrine of *stare decisis,* the rule there announced is left undisturbed.

3. SUPREME COURT. *Objections not made on the trial. New issues.*

   In such case, the action of the court in refusing a peremptory instruction for the defendant will not be reviewed in this court, on the theory that the evidence showed that plaintiff voluntarily and unnecessarily assumed a position of great danger, if no such question was submitted to the court below or tried by the jury.

4. DAMAGES. *Limiting verdict by instructions. Province of the jury.*

   Although, in an action for damages, a circuit court has set aside two former verdicts as excessive, it cannot refuse, on the third trial, to instruct the jury that it is the sole judge of the amount of damages to be assessed under the evidence. The court has no power by instructions to limit the jury to the amount of the former verdicts, or to an amount it may deem adequate.

5. INSTRUCTION. *Should not be abstract.*

   Instructions announcing mere abstract propositions of law, and containing no sort of reference to the case, are objectionable.

6. RAILROADS. *Protection of passengers. Diligence. Reasonable care.*

   An instruction which declares that "railroad companies are bound to exercise very great vigilance and care in maintaining order and guarding passengers against violence from whatever source arising," etc., is erro-

neous.  Reasonable care and diligence, under all the circumstances, is all that is required.

7. SUPREME COURT.  *Erroneous instruction, when prejudicial.*

   If such erroneous instruction is in direct conflict with those for the defendant announcing the true measure of diligence, this court cannot affirm that no harm resulted to defendant, and will therefore reverse the judgment in favor of plaintiff.

FROM the circuit court of the first district of Panola county. HON. JAMES T. FANT, Judge.

The appellee, A. F. Minor, brought this action to recover of the Illinois Central Railroad Company damages for personal injuries suffered by him while a passenger.  The injury was caused by a pistol, carelessly or wantonly discharged by a fellow-passenger in the same car with plaintiff.  The occurrence took place upon an excursion train; which was being run by the defendant from the town of Sardis, Miss., to Memphis, Tenn.  The excursionists were mostly negroes; and, after a day spent in Memphis, the train was returned at night to Sardis.  Many of the passengers were intoxicated and became extremely disorderly, until the coaches became the scenes of the wildest carousing.  Many of the passengers were not only disorderly but turbulent, and pistols were freely discharged, to the great peril of all persons who were near.  There is testimony tending to show that the conductor not only neglected all efforts to suppress the rioting, but, when appealed to, replied, "that he did not give a damn what they did, so that he got his fares."  There is much conflict in the testimony as to the conduct of persons on the train and the course pursued by the conductor, but, for the purpose of this appeal, the verdict of the jury must be considered as having settled all conflicts in the testimony favorably to the plaintiff's case.

The disorderly and turbulent conduct continued until the train reached Love Station, when plaintiff, a white man, who was behaving himself peaceably and quietly, was wounded

by a pistol-shot at the hands of some unknown, disorderly passenger. He was seriously and permanently injured, and brought this suit, alleging that the servants of the defendant in charge of the train negligently failed in their duty to preserve order and protect him from injury. The suit was brought to the May term, 1889. The first trial resulted in a verdict for plaintiff for $10,000, which was set aside on motion of defendant, because the court deemed it excessive to the amount of $5,000, and the plaintiff refused to enter a *remittitur.* A second trial was had upon substantially the same evidence, resulting in a verdict for the plaintiff for $8,562. Defendant again moved for a new trial, on the ground, among others, of excessive damages, and the court again set the verdict aside, because the plaintiff refused to remit to $5,000. The plaintiff reserved general bills of exceptions to the granting of these new trials.

At the May term, 1891, there was a third trial. By agreement, the case was presented to the jury on the evidence contained in the two previous bills of exceptions, no witnesses being put upon the stand. The defendant asked a peremptory instruction, which was refused and exception taken. Exception was also taken to the action of the court in granting instructions for the plaintiff. The special bills of exceptions taken, embodied all the testimony in the case. This third trial resulted in a verdict for plaintiff for $15,000. No motion was made to set aside this verdict, but defendant appeals on the special bills of exceptions above mentioned, taken during the progress of the case.

Among other instructions granted for the plaintiff, were the following:

"1. Railroad companies are bound to exercise very great vigilance and care in maintaining order and guarding passengers against violence from whatever source arising, which might reasonably be anticipated or naturally expected to occur in view of all the circumstances and the number and character of the persons on board. In case of angry or

threatening language, the conductor, without waiting for an overt act of violence, should use all means within his control to prevent violence, and may, if necessary to this end, lawfully eject from his train those threatening the disturbance. *In case of violent, disorderly or riotous conduct in his cars,* it is the duty of the conductor to make all reasonable efforts within his power to quell the disturbance, and bring about peace and quiet; and, to accomplish these ends, the law clothes the conductor of a train with the rights, and exacts of him the duties, of a peace-officer. He has the right, and it is his duty, to use all the force necessary, as far as within his power, to prevent violence or riotous conduct, or to quell such conduct after it has commenced. He should stop his cars, and call to his assistance all the train-hands, and such passengers as are willing to assist him, should this be necessary to establish peace and order on his train. Any failure on the part of the conductor to discharge his duty in suppressing, or making all reasonable efforts to suppress, disorder and violence of which he knows, or has reasonable opportunity to know, or could ascertain by reasonable vigilance on his train, is negligence.

"2. If the jury believe from the evidence, that on the occasion in question there was violent and disorderly conduct on defendant's train, by which injury to plaintiff and other passengers was threatened, and of this the conductor had knowledge, or would have had knowledge had he been discharging his duty as conductor, and that he was negligent in the discharge of his duty in suppressing or attempting to suppress the same, in that he did not do what he could have done and reasonably ought to have done in affording the passengers protection; and that, had he discharged his duty, and promptly intervened in such trouble, order might have been restored, or violence and disorder in some measure lessened or mitigated, and the consequence thereof averted; and that, in this violence and disorder, and in a shooting arising upon such train, plaintiff, being a passenger on defendant's

train, and not participating in said disorderly conduct, or said shooting, received a serious wound, then defendant is liable to plaintiff in compensatory damages.

" 3. If the jury believe from the evidence, that plaintiff is entitled to recover, then they should award him such damages, according to the evidence, as shall compensate him for the injuries sustained, if such be in evidence, and, in estimating his damages, they may take into consideration such loss of time, bodily pain, injury to person, expenses of cure, and mental suffering, as the evidence may disclose was caused by the injury. Also, if in evidence, future damages for loss of health, time, bodily pain and suffering, which the evidence renders it reasonably certain must necessarily flow from the injury, if the evidence discloses that actual injury to the person of plaintiff has been sustained; and in estimating such damages the jury is the judge of the amount to be assessed, and should be governed by the evidence disclosing the circumstances of the case; and it is not necessary that any witness should have testified as to the amount of damages in dollars and cents resulting from bodily pain, mental suffering and loss of health that plaintiff sustained by reason of the injury."

*Mayes & Harris*, for appellant,

Filed a brief reviewing the opinion of the court in *Railroad Co.* v. *Burke*, 53 Miss., contending that the rule there announced is unsound, and asking the court to overrule that case, and, as to the other questions involved, making the following points :

Plaintiff voluntarily placed himself in a situation of exceptional danger. In this, the case at bar differs from the Burke case. Moreover, Minor did not claim the protection of the company. He must be assumed to consent to the disorder. *Volenti non fit injuria.* 3 Am. & Eng. Enc. L., 664.

The third instruction is erroneous in informing the jury that it should judge of the amount of the damages to be as-

sessed, and should be governed by the evidence. It should have added the qualification that, under the peculiar attitude of this case, the verdict could not exceed the sum of $5,000. Two verdicts—one for $10,000 and the other for $8,000—had been set aside, because in excess of $5,000, the sum deemed by the court to be adequate. The court had twice adjudged that such a limit was proper. It should not have allowed the jury to disregard that decision, and bring in a larger verdict on the same testimony. We find no authorities directly in point, but see *Steinbuchel* v. *Wright*, 43 Kan., 307, and *Baker* v. *Madison*, 62 Wis., 137. In any event, the court should have limited the jury to an amount not materially in excess of the former verdict.

The first and third instructions for the plaintiff conflicted with those given for the defendant. The first instruction announced that plaintiff must recover, if there was a general disorder which the conductor negligently failed to suppress, whether any demonstration was made against him specifically or not.

Instructions must not be contradictory. *Railroad Co.* v. *Miller*, 40 Miss., 45; *Railroad Co.* v. *Kendrick*, 40 *Ib.*, 374; *Herndon* v. *Henderson*, 41 *Ib.*, 584; *Cunningham* v. *State*, 56 *Ib.*, 268.

*Shands & Johnson*, for appellee.

Unless the court has made mistakes against the defendant in the instructions, the judgment must be affirmed. Code 1880, § 1719; *Parham* v. *Stith*, 61 Miss., 199; *Tagert* v. *Baker*, 57 *Ib.*, 303; *Bowers* v. *Ross*, 55 *Ib.*, 213.

This court will not reverse because of the refusal to grant the peremptory instruction. This is never done unless all the facts in evidence, taken as true, and every just inference from them, fails to maintain the issue. If there is room for doubt, the instruction should not be given. There is no error in the instructions for the plaintiff. On this point see *Railroad Co.* v. *Burke*, 53 Miss., 200; *Railroad Co.* v. *Hinds*, 53 Pa., 512; 76

*Ib.*, 510; 34 Conn., 554; 6 Blatch., 158; 55 N. Y., 108; 61 Ga., 215; 87 Mo., 74; 18 Am. & Eng. R. R. Cas., 386; 88 Cal., 536; 97 Mass., 368.

Burke's case may now be relied on as settled law in Mississippi. The jury was emphatically warned, in charges for plaintiff, not to find against defendant unless the conductor knew of the disturbance, and the injury was such as he ought reasonably to have expected, and unless he failed in his duty to protect plaintiff. The verdict of the jury must be taken to have settled all of the conflicts in the evidence in favor of the plaintiff.

The third instruction for plaintiff, as to the measure of damages, has been approved by this court. *Railroad Co.* v. *Thompson*, 64 Miss., 584.

*W. D. Miller*, on the same side.

I submit that errors in the instructions cannot be reviewed unless there has been a motion for a new trial. Code 1880, §§ 1718, 1719, 1720; 60 Miss., 996; 94 Ind., 91; 1 Thompson on Trials, § 709; 2 *Ib.*, § 2712.

A special bill of exceptions is not designed to embody all the evidence, and instructions cannot be passed upon unless all the evidence is presented. 2 Thompson on Trials, § 2784.

There was no error in refusing the peremptory instruction to find for the defendant. It sought to accomplish what could only have been reached by a demurrer.

Assuming that Burke's case is not the law, defendant should have demurred. Having joined issue, defendant admits the cause of action.

By failing to make a motion for a new trial, and thus exhausting its remedies, the defendant lost its right to appeal.

Not only is Burke's case the settled law of this state, but there is not a single case anywhere holding a different doctrine. 8 Bush. (Ky.), 147; 55 N. Y., 108; 90 *Ib.*, 591-2; 76 Pa. St., 510; 103 Ill., 546; 21 Am. & Eng. R. R. Cas., 258; 34 *Ib.*, 462.

WOODS, J., delivered the opinion of the court.

The motion of the appellee to dismiss the appeal.and to affirm the judgment of the court below must be denied. If the appellant had made its motion in the court below to set aside the third verdict, and the same had been overruled, two former verdicts for the appellee having already been set aside for errors not of law, and the appellant had excepted, and had then brought its appeal to this court, on a general bill of exceptions to this action of the trial court, we could not have considered it for any purpose whatever, as has been repeatedly held in this state. See *Strickland* v. *Hudson,* and *Bowers* v. *Ross,* both in 55 Miss., and the earlier cases therein cited. What reason can be assigned, then, for requiring the appellant to do this vain and fruitless thing?

That the proper course was pursued in excepting to the action of the trial court in giving and refusing instructions, and in presenting the appeal on a special bill of exceptions is not open to controversy. See *Rays* v. *McClary,* 26 Miss., 404; *Thornton* v. *Railroad Co.,* 29 *Ib.,* 143; *Garnett* v. *Kirkman,* 33 *Ib.,* 389; *Parham* v. *Stith,* 61 *Ib.,* and the cases already cited in 55 Miss.

1. The action of the court in refusing the peremptory instruction prayed by the appellant is the error first assigned, and this assignment is elaborately and strongly supported on three grounds, viz.:

(1) That no cause of action was presented by the declaration, nor was any made out by the evidence, a carrier not being required to protect a passenger from the assault of his fellow-passenger; (2) that the evidence fails to show that the injury complained of was inflicted by a fellow-passenger, or by any one on the train, or by any person under the control of the servants of the railroad company in charge of the train; and (3) that if the liability of the carrier to a passenger for injury inflicted by a fellow-passenger be conceded, then this case does not fall within that rule, because Minor voluntarily placed himself in a position of exceptional dan-

ger, consented to the disorder, and did not claim the protection of the carrier or its servants.

On the first contention we have to say, that, while the rule announced and applied in the case of *Burke* v. *Railroad Co.*, 53 Miss., does not command the full concurrence of our judgment, yet we are not to be understood as denying all responsibility on the part of railroad companies for injuries suffered by one passenger at the hands of his fellow-passengers. Our dissatisfaction arises out of the application, mistakenly made, as we conceive, to the facts of that case. The case, as it seems to us, involves the making of a bad precedent to meet a hard case. But the decision has stood unassailed for sixteen years, and the doctrine, with the limitations put upon it by the court in its opinion, has been accepted and acted upon as the rule of the passenger's rights, and of the railway's responsibility, through this long period, and, as intimated in *Royston* v. *Railroad Co.*, 67 Miss., we "feel constrained to yield to that decision as authority for the rule it announces." But, as was declared by us in Royston's case, "we shall certainly not extend the doctrine so as to embrace any other than a case clearly falling within it."

The Burke case has been carefully reviewed by us, and its doctrine protractedly and repeatedly examined, and we decline to overrule the case and repudiate the rule.

The second contention under this assignment we cannot consider. In the peculiar attitude in which the appeal is presented to us, we can only look to the evidence contained in the special bill of exceptions for the purpose of passing upon the alleged errors of law said to have been committed by the trial court. Of course, if it appeared that there was absolutely no evidence showing, or tending to show, that Minor's injury was inflicted by a fellow-passenger, the peremptory instruction should have been given; but the record discloses much testimony tending to show that the hurt was done by a fellow-passenger, and this disputed question of fact has, by three successive verdicts, been found in Minor's favor.

The third contention under this first assignment, to the effect that Minor voluntarily placed himself in a position of exceptional danger, consented to the risks of the riotous conduct of his fellow-passengers, and did not claim protection of the company, strongly impresses us, and, if supported by evidence, would seem to put this case without the general rule that imposes liability upon the railroad company for injuries inflicted upon one passenger by his fellow-passenger. If Minor, in fact, voluntarily put himself in a position of known, apparent, exceptional danger, and took the chances of hurt from his drunken and disorderly fellow-passengers on a Sunday excursion train, of negroes mainly, and if he continued, from Memphis to Love's Station, to retain his position in the face of great apparent danger, without any effort to avoid the same, and without any complaint to the railroad company's servants, we would be inclined to the opinion that his case is exceptional, and not embraced in the rule announced in the case of Burke. But no such question was presented to the court below, nor was any such issue tried by the jury. To say now that the peremptory instruction should have been given for the railroad company, in view of the theory we are considering, on the principle *volenti non fit injuria*, would be to permit a new case to be made here, and the controversy determined on an issue never raised on the trial below. This we cannot do, much as we are impressed by the view now advanced by counsel in this court.

2. We come next to consider the contentions, numbered five and six in the abstract of counsel for appellant. These may properly be examined together, and, thus looked at, the contention is .this : that the third instruction given for the plaintiff was erroneous, in that it informed the jury that they were the judges of the amount of damages to be assessed, and that they should be governed by the evidence disclosing the circumstances of the case, without adding thereto the qualification that, under the peculiar attitude of this case, they could not exceed the sum of \$5,000, or a

sum not materially in excess of that awarded by the former verdict.

The argument in support of this proposition is, that the trial court, in the exercise of the power confided to it to prevent the gross injustice of unconscionable verdicts by juries, resulting from passion or prejudice, had twice set aside verdicts, one for $8,000 and the other for $10,000, on the sole ground that they were excessive, and the third trial having been had upon the evidence produced on the former trials, the court should have interposed its power to prevent a repetition of the imposition of damages in amount already held by the court to be excessive—the product of passion or prejudice; in other words, as we understand it, that the court, by the addition of the qualification named, should have prevented the jury from passing the bounds twice determined by the court on the same testimony, to be proper. But we submit that such course on the part of the learned court, although taken professedly in vindication of the essential prerogatives and powers of a court of justice, would have been really a finding by the court, and would have been an invasion of the constitutional right of the appellee to have a finding by the jury.

Say the counsel, in weighty words: "Under the constitution of our judicial system, the power is committed to the judge, in the exercise of a sound discretion, to check the imposition of unconscionable verdicts, the result of passion or of prejudice. It would be idle, and, we respectfully submit, a judicial farce, to concede such a power, if it is to be, not merely nullified, but even, as in this case, made to act as a sort of boomerang, simply by the persistence of successive juries. It would then be no power. Its only practical result would be to punish the defendant for an effort by the court to shield him within reasonable limits. The greatness itself of the passion, the very ivincibility of prejudice, will lead, inevitably, to the result attained here, that on the subsequent trials the verdict will be increased by the action of the court,

striving within the limits of its authority for the reverse, and, on the third trial, when the court and the defendant are run into the *cul-de-sac* of the statute," the defendant will be without any protection from the passion or prejudice of the jury.

If the appellant had pressed the views impugning the strength and validity of our statute, which is thus indirectly assailed, upon the attention of the trial court in support of a motion for a new trial, and had pressed them here on us, a new trial having been denied below, we should consider and pronounce upon their weight. But, as the statute was not assailed on the trial below, it is impossible for us to intimate any opinion now; nor are we to be understood as making any intimation whatever touching the constitutionality of the statute complained of.

3. Having thus failed to agree with the counsel for appellant on any of the contentions considered, we come now, at last, to consider the remaining error complained of to which we think it necessary to advert. It is asserted that the first and second instructions given for the appellee were erroneous and in conflict with the charges of the appellant.

The first instruction complained of is objectionable because of its abstract character. It is a long compilation of mere abstract propositions, and contains no sort of reference to, or application of its statements of law to the case in hand. But it is not alone objectionable on account of this very prevalent vice of indoctrinating a jury by the statement of legal abstractions. The opening statement, the initial legal abstraction, is palpably incorrect, and was doubtless injuriously misleading.

This instruction informs the jury that "railroad companies are bound to exercise very great vigilance and care in maintaining order and guarding passengers against violence from whatever source arising," etc. If this is correct, the jury was told that the highest degree of vigilance and care was the test to be applied to the conduct of the company's servants in

guarding Minor and other passengers; or, to put it in another way, for the purpose of exposing its unsoundness, if the conductor and servants of the railroad company were in the slightest degree wanting in vigilance and care, then Minor was entitled to a recovery.

Stated in any form, the proposition is not true. Nor do we understand the learned counsel for the appellee to so contend. Their position seems to be, that even if this charge be erroneous, in this particular, yet its hurtfulness is cured in other instructions given, in which the jury was told that reasonable care and diligence was the measure of the appellants accountability. In the face of the irreconcilable conflict in the instructions touching the measure of care and diligence on the part of the railroad company, can it be affirmed that the first instruction for appellee, which informed the jury that very great vigilance and care was the measure of appellant's duty, may not have tended to produce the result arrived at? Can it be said that, in the absence of this erroneous instruction, the jury would have rendered the same verdict? We feel constrained to answer negatively.

Wherefore, for this error of law committed by the court below in giving the first instruction for the appellee—

*The judgment is reversed, a venire de novo awarded, and the cause remanded.*