16004.   YELLOW CAB COMPANY OF ATLANTA *v.* CARMICHAEL.

A cause of action against the cab company for damages on account of injuries inflicted by others upon the plaintiff, a passenger, was stated in his petition, from which it appeared that through a named person he made a contract with the defendant, through its agent and servant, the driver of an automobile cab, to transport him safely to certain railroad-shops by turning in at a designated entrance; that the driver was warned that if he did not turn in at that entrance, but continued driving on the highway past the entrance, the probability was that his passengers would be attacked and injured by a band of strikers; that when the cab arrived at the point on the highway where it was necessary to turn off in order to arrive at the designated entrance, the driver was so informed and was told to turn in, but knowingly and wilfully refused to do so, and drove on past the entrance at a high rate of speed until he came in contact with the strikers, who forced the plaintiff to disembark from the cab, and after they had carried him two miles up the highway, inflicted the injuries in question. The demurrer was properly overruled.

DECIDED JANUARY 15, 1925.

Damages; from city court of Atlanta—Judge Reid.   October 1, 1924.

This is a suit to recover damages for alleged personal injuries. A demurrer to the petition was overruled, and the defendant excepted.   The petition alleges:

"1.   That Yellow Cab Company of Atlanta is a corporation doing business in City of Atlanta, said State and county; that such company owns, operates and runs for hire certain automobile cabs with drivers for the convenience of passengers arriving Atlanta from distant points; that the cab company is a common carrier of passengers and has an office and agent in the county of Fulton upon whom process may be served.

"2.   That plaintiff arrived at the Terminal Station in Atlanta, Georgia, on or about July 17, 1922, in company with three other men, for the purpose of accepting work for Seaboard Air-Line Railroad Company, as machinists, at its shops out near Atlanta water-works; that he was in charge of one Rogers; his employment was to be that of machinist at said shops.

"3.   That on said date there was a strike, or lockout, among the regular mechanics at said railroad-shops; that said Rogers, upon arrival in Atlanta, and before engaging transportation from the depot to the shops, a distance of six miles, talked to, explained and gave explicit instructions and directions to an agent and cab-driver of the Yellow Cab Company, at the Terminal Station, Atlanta, which directions and instructions said driver, whose name is unknown to petitioner, said he understood and agreed upon, and thereupon was employed and engaged to make the trip; that it was the purpose of Rogers and those in charge to drive out to said shops, and to begin work as machinists for said railroad, and, when reaching the described point, for the driver of the cab company to turn in (which was detailed in the contract of employment) from the highways onto the property of the railroad company, there being no strikers at said point, which at that time was protected both by an injunction from the United States district court and armed guards, and that said Rogers did not want to drive past said entrance, because there were banks [bands?] of strikers further up the road who would do violence to them if said Rogers and the men with them were brought into contact with said strikers.

"4. That all of these facts were explained to said driver, and he

was then asked if he could carry Rogers and his men, including petitioner, safely to the entrance heretofore mentioned; that said driver for and on account of the cab company, there being no other agent of the cab company present, stated and agreed to transport said men from the depot safely to the shops, and agreed to turn in at the entrance designated and agreed upon.

"5.     Thereupon the price for carriage was asked, and the driver informed said Rogers that the register would mark the amount of fare at the end of the trip; that Rogers and petitioner, in company with the other men, boarded the cab and were transported towards the shops.

"6.     That just before reaching the entrance agreed upon, said Rogers spoke to the driver and informed him where to turn off the highway; that when the entrance was reached the driver was told to 'turn in' at said point, but he refused to so turn the cab off the highway, and kept same going up the road at a fast rate of speed; that in so traveling the cab approached and reached the second, or main, entrance of the shops, and said driver was again told to turn into the shop property and off the main highway; that said driver refused and failed to do as directed, and kept the machine, which was a closed cab, going up the road, past the shops, in the direction of the high bridge, 250 yards beyond the second entrance, where the cab was slowed down and boarded by four or five strikers, or their sympathizers; the cab then stopped, and the occupants, or passengers, ordered to disembark from the cab to the ground.

"7.     That immediately the passengers alighted from the cab, the strikers, by mob violence, threatened the lives of petitioner and those that had ridden out to the shops in the yellow cab; that petitioner was forced to enter an automobile awaiting alongside; that just after, he, with the other occupants of the cab, entered the waiting automobile, and were hastily driven two miles up the road; that the car was then stopped and petitioner ordered out of the car; that when he got upon the ground one of the mob struck him a severe blow over the face with a stick that broke the bridge of his nose and knocked him to the ground in an unconscious condition; that thereafter he does not know what was done with him until the next morning he came to, while lying in a deep ditch alongside the highway, close to where he had been first struck.

"8.     That he then discovered he had a broken leg and could not

walk; that within a little while some stranger came along on the way to Atlanta, picked him up and carried him to a hospital."

(The 9th, 10th, and 14th paragraphs of the petition set forth in detail the alleged injuries sued for.)

"11.   It is alleged that defendant's agent, at the time he accepted the employment to transfer petitioner and others to said shops, knew the conditions surrounding the passage to same; knew that if the strikers came into contact with his passengers, who were intended machinists for said railroad, that the strikers would attempt to beat and otherwise injure his passengers; that he knew this when he contracted with Rogers for the safe passage; that he, the cab-driver, also knew that if he did not follow, but refused to follow, the directions given him as to where to turn in off the highway onto the property of the railroad company, and that if he would drive past the entrance, as he did, that he would run into the strikers camped above said shops and thus cause the passengers in his car to come into contact with the strikers and be injured.

"12.   That said driver was a sympathizer of the strikers, and, as the agent and driver of defendant's cab, he being the only agent of defendant on the spot, at the time of employment with whom Rogers could and did contract, and said defendant and its agent received the benefit of the contract of carriage, to wit, the fare paid said cab company; and defendant's servant, while acting within his scope of authority as servant and agent for said cab company, contracted for said passage to a designated point, and defendant and its agent negligently failed and refused to deliver Rogers, petitioner, and others to the point contracted for delivery, and negligently, by its conduct, in failing and in refusing to follow directions and in carrying petitioner beyond his destination, knowingly placed and carried petitioner, against his will, amidst a mob of strikers at the bridge above the shops of said railroad; and it is alleged that defendant's agent knew [they] would fall in among said strikers, and that petitioner would be hauled out of the cab and beaten and otherwise severely injured; that it was the duty of defendant and its agent, after contracting for delivery at a certain point, to deliver petitioner there and not pass the same; that such conduct on the part of defendant and its agent, acting within the scope of his authority, was aggravating circumstances in the acts

and intentions; further, that same was malicious, wilful, and wanton in the extreme.

"13. It is alleged that at the time and place of assault petitioner did nothing to cause an attack upon his person, either by expression or conduct."

The demurrer to the petition was on the following grounds:

"1. That plaintiff's petition sets forth no cause of action against defendant, because: (*a*) It appears that the alleged act of defendant's servant was not the proximate cause of the alleged injury to plaintiff, but, if any injury occurred to plaintiff, it was the intervening acts of third persons. (*b*) It appears that the consequences that flowed from the alleged act of defendant's servant could not have been expected to occur naturally. (*c*) It appears that the alleged injury, if any, inflicted upon plaintiff, was not the reasonable and natural result of the alleged wrongful act of defendant's servant, but the injury, if any, was caused by the intervening criminal acts, if any, of third persons which defendant had no reason to apprehend. (*d*) It appears that the connection between the original wrong, if any, of defendant, and the resulting injury to plaintiff was broken by intervening acts of third persons."

*Hewlett & Dennis,* for plaintiff in error.

*C. P. Goree, George & John L. Westmoreland, C. G. Reynolds,* contra.

BROYLES, C. J. (After stating the foregoing facts.) A common carrier of passengers for hire is bound to use extraordinary care and diligence to protect them, in transit, from violence or injury by third persons; and whenever a carrier, through its agents and servants, knows, or has opportunity to know, of a threatened injury to a passenger from third persons, whether such persons are passengers or not, or when the circumstances are such that injury to a passenger from such a source might reasonably be anticipated, and proper precautions are not taken to prevent the injury, the carrier is liable for damages resulting therefrom. *Brunswick & Western R. Co.* v. *Ponder,* 117 *Ga.* 63 (1) (43 S. E. 430, 60 L. R. A. 713, 97 Am. St. Rep. 152); *Savannah, Florida & Western Ry. Co.* v. *Boyle,* 115 *Ga.* 836 (1) (42 S. E. 242, 59 L. R. A. 104); *Hillman* v. *Georgia R. &c. Co.,* 126 *Ga.* 814 (56 S. E. 68, 8 Ann. Cas. 222); *Grimsley* v. *Atlantic Coast Line R. Co.,* 1 *Ga. App.* 557 (1) (57 S. E. 943).

A carrier is liable in damages for injuries to a passenger caused by the wilful and wanton acts of its employees, even though the purpose of the employees was not to serve their employer by such acts. *Savannah, Florida & Western Ry. Co.* v. *Quo,* 103 *Ga.* 125 (1), 126 (29 S. E. 607, 40 L. R. A. 483, 68 Am. St. Rep. 85), and citations; *Wolfe* v. *Georgia Ry. & Electric Co.,* 2 *Ga. App.* 499 (1) (58 S. E. 899).

"Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, *and such as the parties contemplated, when the contract was made, as the probable result of its breach*" (italics ours). Civil Code (1910), § 4395. In the instant case it is alleged in the petition that the plaintiff, through Rogers, made an express contract with the defendant, through its agent and servant, the driver of the automobile cab, to transport him safely to the railroad-shops by turning in at a designated entrance; that said agent was notified and warned that if he did not turn in at that entrance, but continued driving on the highway past the entrance, the probability was that his passengers would be attacked and injured by a band of strikers; that when the cab arrived at the point on the highway where it was necessary to turn off in order to arrive at the designated entrance, the driver was so informed by Rogers and was told to turn in, but the driver knowingly and wilfully refused to so turn in, and drove on past the entrance at a high rate of speed until he came in contact with the strikers, who inflicted the injuries upon the plaintiff sued for. Under these allegations in the petition, and the decisions cited above, the petition was not subject to the demurrer interposed. This ruling is not affected by the fact that the injuries to the plaintiff were inflicted after he had been forced by the strikers to disembark from the defendant's cab, and after the strikers had carried him some two miles up the highway.

The decisions cited by counsel for the plaintiff in error, holding that a defendant is not liable where there intervenes, between its wrongful act and the injuries sued for, a wilful, malicious, and criminal act of a third person, do not apply in a case like this, where the defendant had reason to apprehend that its original wrongful act would probably result in its passenger being criminally assaulted by the third person.

The court properly overruled the demurrer interposed.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*