77201. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY v. ALLEN.
(374 SE2d 761)

BANKE, Presiding Judge.

At approximately 9:00 p.m. on December 21, 1984, the plaintiff-appellee was raped at knifepoint in the parking lot of MARTA's Hightower rail station in Atlanta, as she was returning to her car from the train. She filed the present action against MARTA to recover for her resulting injuries, alleging that the transit authority had failed to provide adequate security in the parking lot. A jury awarded her

$250,000, and MARTA filed this appeal. *Held*:

1. MARTA enumerates as error the trial court's refusal to exclude evidence showing that ten armed robberies had occurred in the same parking lot prior to December 21, 1984—six of them in 1984, two in 1983, and one each in 1982 and 1981. This evidence was offered by the plaintiff for the purpose of establishing that MARTA was on notice that patrons using the lot were exposed to an unreasonable risk of danger from criminal assault. MARTA contends that the evidence was not admissible for this purpose because the prior offenses were not shown to have occurred under conditions substantially similar to those attending the assault against the plaintiff. In particular, MARTA complains that although one of the plaintiff's primary allegations of negligence concerned its failure to replace a floodlight which had burned out in the vicinity of her car, virtually all of the prior offenses in question had occurred during daylight hours.

" 'It is the duty of a proprietor to protect an invitee from injury caused by the misconduct of employees, customers and third persons if there is any reasonable apprehension of danger from the conduct of said persons or if injury could be prevented by the proprietor through the exercise of ordinary care and diligence.' (Cit.) Ordinarily, even where the proprietor's negligence is shown, he would be insulated from liability by the intervention of an illegal act which is the proximate cause of the injury. (Cit.) 'However, the above rule has been held inapplicable if the defendant (original wrongdoer) had reasonable grounds for apprehending that such criminal act would be committed.' (Cits.)" *McClendon v. C & S Nat. Bank*, 155 Ga. App. 755, 756 (272 SE2d 592) (1980).

In actions to recover for injuries resulting from the criminal misconduct of third persons on business premises, evidence showing that criminal acts have occurred on the premises in the past is admissible to show that the proprietor had reasonable grounds for apprehending the occurrence of such acts in the future, but only if there is a "substantial similarity" between the prior criminal acts and the criminal act giving rise to the plaintiff's claim. See *McCoy v. Gay*, 165 Ga. App. 590, 592 (302 SE2d 130) (1983); *Nalle v. Quality Inn*, 183 Ga. App. 119, 120 (358 SE2d 281) (1987). Whether a "substantial similarity" exists must be determined by the facts of each individual case. It is not required that the offenses be identical. "All that is required is that the prior [incident] be sufficient to attract the owner's attention to the dangerous condition which resulted in the litigated [incident]." *Pembrook Mgt. v. Cossaboon*, 157 Ga. App. 675, 677 (278 SE2d 100) (1981).

The prior offenses which were brought to the jury's attention in the present case were similar to the offense which resulted in the plaintiff's injuries in the obvious respect that each involved a criminal

assault against a MARTA patron in the parking lot of the Hightower station. The major dissimilarities were that none of them had involved rape, and only one or two of them had occurred at night. On balance, however, we conclude that the prior offenses were admissible on the issue of whether MARTA knew or should have known that there was an unreasonable risk of danger from criminal assault at the location in question. Assuming arguendo that the occurrence of such criminal activity at night would not suggest the likelihood of such activity during the day, the occurrence of such activity in broad daylight certainly suggested the likelihood that patrons using the parking lot would be exposed to danger from criminal assault in the darkness. Although four of the prior offenses occurred prior to 1984, it does not follow that they were too remote in time to be relevant, since, taken in context, they could be viewed as establishing a pattern of increasing criminal activity at the location in question. Compare *McCoy v. Gay*, supra, 165 Ga. App. at 593.

The trial judge in this case specifically charged the jury that the burden was on the plaintiff to show that the prior incidents were "substantially similar," and he defined this as meaning "that the prior incidents must not be too remote in time and must have occurred in similar conditions. . . ." Under all of the circumstances, we hold that the trial court did not err in allowing the jury to consider the prior offenses. Accord *Bayshore Co. v. Pruitt*, 175 Ga. App. 679 (334 SE2d 213) (1985).

The cases relied upon by MARTA are distinguishable on their facts and do not demand a contrary result. In *McCoy v. Gay*, supra, the plaintiff sought to recover for injuries received when he was robbed in the parking lot of the defendant's motel. Two of the three prior offenses offered as evidence were adjudged insufficiently similar to have placed the proprietor on notice of the potential for such assaults because they had occurred "at or in close proximity to the actual guest facilities provided by the Inn" rather than in the parking lot, which was "on the periphery of the premises some distance from the actual Inn facility itself." Id., 156 Ga. App. at 592. Although the third offense had occurred in the parking lot, it had taken place some ten years earlier; and the court held that under such circumstances it could not be considered evidence of a dangerous condition currently existing at that location in the absence of a showing that the condition of the lot with respect to lighting and security had been the same at that time. Id. at 593.

In *Washington Road Prop. v. Stark*, 178 Ga. App. 180 (342 SE2d 327) (1986), also relied upon by MARTA, the plaintiffs were assaulted as they were entering their room at the defendant's motel. The occurrence of two prior robberies at the motel, some three and five years earlier respectively, was held insufficient to place the defendant on

notice that its patrons were subject to a present danger from criminal assault in their rooms because both had occurred at the front desk. In *Nalle v. Quality Inn*, supra, the plaintiff was attacked and robbed as he was standing near the swimming pool on the premises of the defendant's motel drinking a cup of coffee. Of the 25 prior offenses relied upon by the plaintiff to establish the defendant's knowledge of the danger in question, only two had involved "personal confrontation," and both of those had occurred at the front office. Id. at 122. Consequently, none was considered sufficiently similar to create a jury issue.

2. MARTA contends that even if the evidence concerning the robberies was admissible, the trial court erred in allowing the plaintiff to introduce, over its hearsay objection, the incident reports concerning the offenses which had been prepared by its security personnel. These reports were not offered to prove that the incidents had occurred (which does not appear to have been contested) but to show that the offenses had been reported to MARTA. Where evidence is offered "to establish the fact that something was said, not the veracity of its content, [it] is admissible to explain conduct and ascertain motives, not as hearsay, but as original evidence." *Edgeworth v. Edgeworth*, 239 Ga. 811, 812 (239 SE2d 16) (1977). See generally OCGA § 24-3-2. This enumeration of error is consequently without merit.

3. The trial court did not err in admitting into evidence a copy of the emergency room report regarding the treatment received by the plaintiff immediately following the rape. "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence." OCGA § 24-3-4. See *Sanders v. Southern Farm &c. Ins. Co.*, 174 Ga. App. 888, 889 (332 SE2d 33) (1985). Although MARTA contends in its brief on appeal that the emergency room report contained certain "extremely inflammatory" statements, the nature of those statements is not specified. From an examination of the report, much of which is illegible, it would appear that MARTA's concern is with the plaintiff's description of the rape, as recounted to hospital personnel. There is, however, no suggestion that this description was inaccurate; and if it was, the plaintiff was available in court for cross-examination on the issue. See *Shelton v. Long*, 177 Ga. App. 534, 535 (339 SE2d 788) (1986).

4. MARTA contends that the trial court erred in excluding evidence "concerning crime statistics throughout the MARTA system and within the general vicinity of the Hightower station." The asserted relevance of this evidence was "to show the adequacy of

[MARTA's] security system as evidenced by the extremely low incidence of crime throughout the system, and at Hightower, even though the Hightower station sits in a very high crime area, [as well as to show] that MARTA provides better [police] coverage than the City of Atlanta could ever hope to achieve, [and] that they are extremely effective and totally non-negligent in their approach towards and their implementation of security measures."

Initially, we observe that MARTA never made any offer of proof concerning the statistics in question. Generally speaking, "[f]ailure to make an offer of proof leaves nothing for this court to review." *Ellis v. Cameron & Barkley Co.*, 171 Ga. App. 211 (2), 212 (319 SE2d 38) (1984). Even assuming, however, that MARTA was in fact prepared to offer statistics tending to prove the general efficacy of its security system, such evidence clearly would not have been admissible on the issue of whether due diligence was exercised at the time and place in question. See generally *Ga. Ports Auth. v. Mitsubishi &c. Corp.*, 156 Ga. App. 304 (4), 307 (274 SE2d 699) (1980), and cases cited therein. " 'The inquiry being what was proper to be done under given circumstances at a particular point, proof of what was usually done at a point nearby under different circumstances cannot illustrate the question.' " *MARTA v. Tuck*, 163 Ga. App. 132, 139 (292 SE2d 878) (1982), quoting from *Atlanta Ice &c. Co. v. Mixon*, 126 Ga. 457 (2) (55 SE 237) (1906). MARTA's diligence on the occasion in question could no more be established by comparing the crime rate on its rail system with the crime rate in the surrounding community than could a driver's exercise of diligence on a particular occasion be established by proof that he had a better than average driving record.

This court's decision in *R. O. H. Properties v. Westside Elec. Co.*, 151 Ga. App. 857 (261 SE2d 767) (1979), relied upon by MARTA, does not constitute authority for a contrary conclusion. There, an electrical contracting firm being sued for damages caused by a fire originating in one of its installations was permitted to show that it was unaware of any similar problems arising from previous such installations. In the case before us, the excluded evidence clearly was not offered to establish (and would not have established) that MARTA was unaware of any prior criminal assaults against patrons using the Hightower parking lot. Rather, it was offered to establish the general diligence of MARTA's security forces.

5. MARTA contends that the following jury instruction concerning its duty to protect its patrons was erroneous because it was expressed in the disjunctive rather than the conjunctive: "I charge you that it is the duty of a proprietor . . . to protect an invitee . . . from injury caused by the misconduct of third persons if there is any reasonable apprehension of danger from the conduct of said person *or* if injury could be prevented by the proprietor through the exercise of

ordinary care and diligence." (Emphasis supplied.)

The language in question has been used by this court repeatedly in delineating the duty of a proprietor to protect invitees from the misconduct of third persons present on the premises. See *Hewett v. First Nat. Bank*, 155 Ga. App. 773, 774 (272 SE2d 744) (1980); *Bowling v. Janmar*, 142 Ga. App. 53, 55 (234 SE2d 849) (1977); *Ga. Bowling Enterprises v. Robbins*, 103 Ga. App. 286, 288 (119 SE2d 52) (1961); *Moone v. Smith*, 6 Ga. App. 649 (1) (65 SE 712) (1909). Consequently, this enumeration of error is without merit.

6. MARTA contends that the trial court erred in charging that a proprietor is "under a duty to exercise ordinary care to discover dangers on its premises and either make the premises safe or warn invitees of the danger," without also giving its requested charge that "there is no duty to warn a person of the existence of a condition when that person already knows the existence of such condition. . . ." This enumeration of error is also without merit. The trial court specifically instructed the jury that the plaintiff could not recover "if, by the exercise of ordinary care, [she] could have avoided the consequences of the defendant's negligence, if any. . . ." Thus, in the context of the charge as a whole, the language complained of cannot reasonably be interpreted as having authorized the jury to award damages based on the appellant's failure to warn of a danger which was already known or obvious to the plaintiff. See generally *American Home Assur. Co. v. Stephens*, 121 Ga. App. 306 (4), 310 (174 SE2d 186) (1970).

7. Asserting that the plaintiff "was well aware of the danger in being out alone in the City of Atlanta at night and yet voluntarily chose to undertake those risks," MARTA contends that the court erred in failing to give its requested charges on comparative negligence, contributory negligence, and assumption of risk.

As previously indicated, the court did in fact charge that the plaintiff could not recover "if, by the exercise of ordinary care, [she] could have avoided the consequences of the defendant's negligence, if any. . . ." With respect to its requested charges on comparative negligence and assumption of risk, MARTA does not suggest what reasonable precautions for her own safety the plaintiff failed to take under the circumstances. There certainly is no indication that she was aware a rapist was lurking near her car, and we presume that MARTA does not take the position that anyone who uses its rail system at night is presumptively lacking in care for his or her safety. The plaintiff had parked her car in the MARTA lot prior to taking the train to downtown Atlanta to go to work that morning, and the rape occurred as she was returning home. We cannot accept the proposition that her duty to exercise ordinary care for her own safety under the circumstances required her either to abandon the car in the lot

overnight or to make other arrangements to retrieve it and return home. The charges requested by MARTA on assumption of risk and comparative negligence were in any event deficient in that they failed to specify that MARTA had the burden of proof with respect to these defenses. See *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858, 861 (360 SE2d 418) (1987). It follows that this enumeration of error also fails to establish any ground for reversal. See generally *Slaughter v. Linder*, 122 Ga. App. 144 (2b) (176 SE2d 450) (1970).

8. MARTA enumerates as error the trial court's refusal to give its requested charge that "evidence of a custom or practice within a particular industry, group or organization may be considered by you as bearing upon the standard of care applicable in determining whether negligence exists." It is asserted that this charge was supported by the following expert testimony, dealing with the absence of surveillance cameras in the parking lot: "I have never recommended the use of closed circuit television in a transit system parking lot because my experience of transit systems that I have observed with closed circuit television in that type of parking lot has essentially been negative."

"In order to show negligence or the lack of it by conforming to a custom, it must be shown that the custom was universal among all persons or parties similarly situated." *City of Macon v. Yaughn*, 83 Ga. App. 610, 614 (64 SE2d 369) (1951). The testimony in question clearly did not purport to show MARTA's compliance with an industry-wide custom or practice. Consequently, this enumeration of error is also without merit.

9. In the context of the charge as given, which included unambiguous instructions that the plaintiff could recover only through proof that MARTA had been guilty of negligence and that such negligence was the proximate cause of her injuries, the judge was not required to give MARTA's requested charge that a proprietor is not an insurer of the safety of invitees coming upon the premises, nor to charge that an owner may not be presumed negligent based upon a mere showing that an injury was sustained by one rightfully upon the premises. Accord *Stouffer Corp. v. Henkel*, 170 Ga. App. 383, 388 (9, 10) (317 SE2d 222) (1984).

10. The trial court did not err in denying MARTA's motion for directed verdict.

11. The plaintiff's contention that the trial court erred in excluding evidence of eight additional crimes which had previously occurred on the premises is rendered moot by the foregoing and could not, in any event, be addressed in the absence of a cross-appeal.

*Judgment affirmed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED OCTOBER 4, 1988 —
REHEARING DENIED OCTOBER 24, 1988 

*Eve A. Appelbaum,* for appellant.
*D. Lake Rumsey, Jr.,* for appellee.