A92A1267. STRINGER et al. v. SOUTHEASTERN STAGES, INC. et al.
(427 SE2d 494)

POPE, Judge.

While a passenger on a bus en route from Augusta to Atlanta, appellant-plaintiffs' son was shot to death in a sudden and unprovoked criminal assault by a co-passenger. As a result, plaintiffs filed the instant wrongful death action against appellee-defendants, the corporation which operated as a common carrier and its agent. After discovery, defendants moved for summary judgment and the trial court granted the motion. Plaintiffs appeal.

Plaintiffs assert several theories of liability against defendants. Defendants admitted that the applicable industry and regulatory rules prohibit the transportation of loaded firearms on a common carrier. By way of enforcing this rule, defendants conducted only a visual inspection of passengers as they boarded the bus. First, plaintiffs assert that defendants breached the duty of extraordinary care imposed upon common carriers for the safety of passengers by failing to take precautions, beyond the mere visual inspection of boarding passengers, to prevent a passenger from boarding a bus while in possession of a gun. To support the argument that additional precautions were reasonably necessary in this case, plaintiffs argue the unreasonable risk of harm to passengers from violent crimes was foreseeable by virtue of prior substantially similar crimes. Knowledge of the unreasonable risk of criminal attack upon persons to whom a duty of care is owed "may be demonstrated by evidence of the occurrence of prior substantially similar incidents." *Savannah College of Art & Design v. Roe,* 261 Ga. 764, 765 (409 SE2d 848) (1991). See also *Lau's Corp. v. Haskins,* 261 Ga. 491 (1) (405 SE2d 474) (1991); *MARTA v. Allen,* 188 Ga. App. 902 (374 SE2d 761) (1988). Even though the cited cases involved premises liability, we see no reason why the rule of these cases must be confined to knowledge of a dangerous static condition

on real property, as proposed by the dissenting opinion. Thus, we see no reason why this rule is not applicable to the duty of care owed to passengers by a common carrier.

Defendants argue plaintiffs presented no evidence of any substantially similar incidents since no other reported case exists in which one of defendants' passengers was assaulted on a bus by a co-passenger. The record reflects, however, that in 1988 a bus driver was assaulted by a knife-wielding passenger and in 1986 a bus driver was repeatedly stabbed by a passenger. The shooting at issue in this case occurred in June 1989. Simply because the previous incidents involved knives instead of a gun and drivers instead of passengers does not establish, as a matter of law, that the previous incidents are not substantially similar. Certainly, the criminal attack of a driver with a weapon while he is driving a bus places all the passengers on board at risk from the criminal act. "Whether a 'substantial similarity' exists must be determined by the facts of each individual case. It is not required that the offenses be identical. 'All that is required is that the prior (incident) be sufficient to attract the [defendant's] attention to the dangerous condition which resulted in the litigated (incident).' *Pembrook Mgt. v. Cossaboon*, 157 Ga. App. 675, 677 (278 SE2d 100) (1981)." *MARTA v. Allen*, 188 Ga. App. at 903. We cannot hold as a matter of law that a jury could not find from the evidence that the previous assaults were sufficient to alert defendants to the dangerous condition or threat posed by passengers carrying weapons onto buses and that defendants failed to exercise extraordinary care to guard against such danger. Thus, the trial court erred in granting summary judgment to defendants.

Plaintiffs also argue that a jury could find defendants failed to exercise the appropriate standard of care under the circumstances because defendants failed to follow their own safety rules. We agree. Defendant Travel, Inc. acted as the agent for Southeastern Stages, Inc. in managing the Augusta bus terminal at which the co-passenger assailant bought a ticket and boarded the bus. Travel, Inc.'s employee manual contains the rule that "[a]ll accidents and unusual occurrences, however trivial they may seem at the time, involving customers, employees, or other persons, must be reported immediately to a supervisor of the company." The evidence, when viewed in the light most favorable to the non-moving party, shows that the assailant told the agent who sold him a ticket that there "probably would be an undercover cop . . . looking for him" and instructed the agent "to tell them that he hadn't seen him." Later, the assailant reminded the agent not to "forget what I told you." The record contains the testimony of the ticket agent who stated he thought nothing of the statement at the time it was made and did not report it to a supervisor. A newspaper reporter who prepared an article about the event, however,

testified the ticket agent told her about the customer's statements and when she asked the ticket agent what he thought of the shooting, he responded, "I bet you that's him." In his deposition testimony, the agent referred to the customer's statements as "unusual." Plaintiffs argue the evidence thus creates an issue for jury determination concerning whether the agent violated the company's rule requiring employees to report unusual occurrences to a supervisor and thus breached a duty to the victim.

"Privately established 'rules are admissible as illustrative of negligence, but the violation of such a rule is not negligence in and of itself. [Cits.]' [Cit.]" *Luckie v. Piggly-Wiggly Southern*, 173 Ga. App. 177, 178 (325 SE2d 844) (1984). Private guidelines are admissible and relevant to show what constitutes the exercise of the appropriate standard of care in a specific situation. Id. Thus, we agree with plaintiffs that a jury could find defendants violated their own private guidelines in this case and from this finding could conclude defendants failed to exercise the appropriate standard of care owed to the victim in this case.

Finally, plaintiffs assert that the behavior of the assailant, in making the unusual remarks to the ticket agent, creates an issue for jury determination concerning whether defendants knew, or in the exercise of extraordinary care should have known, that the assailant posed an unreasonable risk of harm to the victim. In their motion for summary judgment, defendants relied upon cases from the earlier half of this century which held that even the intoxication of a passenger, who was not otherwise behaving boisterously, was not sufficient to alert a carrier that the passenger posed an unreasonable threat of harm to fellow passengers. Compare, e.g., *Pinnell v. Yellow Cab Co.*, 77 Ga. App. 73 (2) (47 SE2d 774) (1948) and *Powell v. Beasley*, 57 Ga. App. 231 (194 SE 926) (1938) (in which the passenger's mere intoxication was insufficient to put defendant common carrier on notice that the passenger posed a threat to the safety of other passengers) with *Hillman v. Georgia R. & Banking Co.*, 126 Ga. 814 (56 SE 68) (1906) and *Grimsley v. Atlantic Coast Line R. Co.*, 1 Ga. App. 557 (1) (57 SE 943) (1907) (in which an intoxicated passenger's boisterous behavior created an issue for jury determination concerning whether the defendant common carrier should have known the passenger posed a threat to the safety of other passengers). From these cases, defendants argued the evidence of the assailant's odd statements is insufficient to show they breached the duty of extraordinary care owed to the victim because the assailant was neither intoxicated nor behaved in a violent manner.

Before a common carrier may be liable for injury from a criminal assault by another passenger, the carrier must have " '[k]nowledge of the passenger's danger or of facts and circumstances from which that

danger may reasonably be inferred. . . .' " *Savannah, Fla. & W. R. Co. v. Boyle*, 115 Ga. 836, 839 (42 SE 242) (1902). Yet, our analysis in this case must go beyond whether the assailant displayed boisterous behavior which would have provided notice to defendants that the assailant posed a threat of harm to other passengers. A jury may determine from the evidence of previous violent attacks with weapons on board defendants' buses that defendants failed to exercise extraordinary diligence in conducting only a visual inspection of the assailant for weapons in this case. A jury may determine from the defendants' own rules, which are relevant to the issue of the standard of care owed in a particular situation, that the standard of care owed to the victim in this case was greater than that imposed by those older cases, cited above, which relieved a common carrier of liability if the carrier was not alerted to the risk of harm to fellow passengers by a passenger's display of boisterous behavior. A jury may conclude that the customer's statements supplied defendants with the facts and circumstances from which a danger to other passengers could have been discovered had the defendants followed their own rules.

The duty imposed upon a common carrier for the safety of passengers is that of extraordinary diligence. OCGA § 46-9-132. A jury may, indeed, conclude, as defendants argue, that the customer's statements were so vague as not to arouse in the extraordinarily diligent mind the knowledge that the customer was potentially dangerous to other passengers. On the other hand, hostage-taking, mass murder and other anti-social behavior in public places is regretfully not uncommon in this time. In light of the evidence of previous attacks by passengers carrying deadly weapons onto the bus, we cannot conclude as a matter of law that a jury could not find that the customer's statements were so "unusual" so as to require, pursuant to defendants' rules, a report to a supervisor who, in the exercise of extraordinary diligence would have discovered that the customer was armed. Thus, the trial court erred in granting defendants summary judgment.

*Judgment reversed. McMurray, P. J., Cooper and Johnson, JJ., concur. Beasley, J., concurs in judgment only. Sognier, C. J., Birdsong, P. J., Carley, P. J., and Andrews, J., dissent.*

CARLEY, Presiding Judge, dissenting.

In my opinion, affirmance of the grant of summary judgment in favor of appellee-defendants is mandated by the controlling Supreme Court authority of *Savannah, Fla. & W. R. Co. v. Boyle*, 115 Ga. 836 (42 SE 242) (1902). Since, in my opinion, the majority does not successfully distinguish that decision and I am unable to do so, I must dissent.

In a case predicated upon an alleged violation of OCGA § 51-3-1, prior knowledge of the owner or occupier that dangerous conditions

exist on his real property which subject invitees to an unreasonable risk of criminal attack is a prerequisite to recovery. *Savannah College of Art & Design v. Roe*, 261 Ga. 764, 765 (2) (409 SE2d 848) (1991); *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991); *McCoy v. Gay*, 165 Ga. App. 590, 591 (302 SE2d 130) (1983). However, the instant case is *not* predicated upon an alleged violation of OCGA § 51-3-1. Appellants' son was not killed in a criminal attack occurring on real property owned or occupied by appellees. He died as a result of a criminal attack occurring on a bus owned and operated by appellees. Accordingly, the focus is not upon appellees' knowledge of any allegedly dangerous static condition on their real property. The focus is upon appellees' knowledge of the violent propensity of one of their specific passengers who was in transit on a particular bus at a certain time. A carrier "is bound to use that extreme care and caution contemplated of very prudent and thoughtful persons to anticipate an injury threatened to the passenger by fellow passengers or third persons." *Grimsley v. Atlantic Coast Line R. Co.*, 1 Ga. App. 557 (1) (57 SE 943) (1907). However, " '[k]nowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases.' [Cit.]" *Savannah, Fla. & W. R. Co. v. Boyle*, supra at 839. " ' "While it is unquestionably the duty of a carrier to exercise extraordinary care for the protection of passengers, the rule does not (require the carrier to take measures to protect its passengers from the intentional misconduct of third persons) until something occurs . . . to put (the carrier) on notice that . . . such conduct . . . might be reasonably anticipated. . . ." ' [Cits.]" *Paschal v. Ferguson Transport*, 189 Ga. App. 447, 448 (375 SE2d 901) (1988).

Construing the evidence most favorably for appellants shows the following: At the time the assailant purchased his ticket, he told the ticket agent that "there probably would be an undercover cop looking" for him and that the ticket agent was "to tell them that he hadn't seen him." After reminding the ticket agent not to "forget what I told you," the assailant boarded the bus and travelled peaceably until, without warning or provocation, he drew a gun and shot and fatally wounded appellants' son.

On this evidence, there is obviously nothing in the assailant's physical conduct which would evince his potential for violence. He was not shown to be intoxicated and, even if he were, "[t]here is no presumption that a person under the influence of intoxicating liquors . . . will commit an assault without provocation, nor will an inference be authorized from the mere fact of intoxication that a person in such condition might be reasonably expected to so conduct himself." *Powell v. Beasley*, 57 Ga. App. 231, 232-233 (194 SE 926) (1938). See also *Pinnell v. Yellow Cab Co.*, 77 Ga. App. 73 (2) (47 SE2d 774) (1948).

Compare *Hillman v. Ga. R. & Banking Co.*, 126 Ga. 814 (56 SE 68) (1906) (boisterous pistol-wielding drunk); *Grimsley v. Atlantic Coast Line R. Co.*, supra (boisterous pistol-wielding drunk).

Accordingly, resolution of the instant case should turn on whether the words attributed to the assailant would be sufficient to evince his propensity to commit violence. The literal words themselves do not suggest the assailant's potential for unprovoked violence. He did not threaten anyone. If deemed to be true, the words merely impart notice that, at some future time, an undercover officer might be interested in the assailant's whereabouts for some unspecified reason. However, the words do not intimate that the assailant feared imminent arrest and was presently armed or would otherwise present a danger to his co-passengers on the bus. If deemed to be false, the words merely impart notice that the assailant either was making a bad joke or was mentally dysfunctional. However, the words do not intimate that the assailant was so dangerously paranoid as to be presently armed and a potential source of danger to his co-passengers on the bus.

In *Savannah, Fla. & W. R. Co. v. Boyle,* supra, the carrier had knowledge that two of its passengers had actually *committed* the crime of stealing a ride and had been placed under arrest. On this evidence, the Supreme Court held: "While it may be that even an ordinarily prudent person would have reason to apprehend that [the two passengers] under arrest for a misdemeanor would escape if afforded a reasonable opportunity, still an extremely careful person could not reasonably apprehend that in making such an attempt they would, in order to effectuate it, make a murderous assault with a deadly weapon either upon one who made an effort to thwart this attempt or upon another who was taking no part in such effort." *Savannah, Fla. & W. R. Co. v. Boyle,* supra at 841. In the instant case, appellees had even less knowledge. They had no actual knowledge that the assailant had committed any previous crime or that his freedom to travel on the bus should be restrained for any reason. They had actual knowledge only that the assailant had made some vague statements as to the reason why he wished to board the bus, which statements did not suggest that he would constitute a present danger to any of his co-passengers on the bus. "There is nothing in the [record] from which it appears that the employees in charge of the [bus], in the exercise of that high degree of care which the [bus] company owed to [appellants' son] to protect him from injury at the hands of those who might be upon [the bus] with [their] consent or with [their] knowledge, could and should have foreseen that the [assailant] would, after having [boarded] the [bus], attempt to . . . commit a murderous [sudden and unprovoked] assault upon [his co-passengers]." *Savannah, Fla. & W. R. Co. v. Boyle,* supra at 841.

It follows that the trial court's grant of summary judgment in favor of appellees should be affirmed. " ' "While it is unquestionably the duty of a carrier to exercise extraordinary care for the protection of passengers, the rule does not apply under the circumstances of this case until something occurs to call into play the exercise of the great degree of care. It was not [shown] that there was anything to put [appellees] on notice that any [unprovoked violent] conduct . . . might be reasonably anticipated, except that the assailant [made vague non-threatening statements]. This was insufficient [to withstand summary judgment]. There is no presumption that a person [who makes such vague non-threatening statements] will commit an assault without provocation, nor will an inference be authorized[,] from the mere fact [that such statements were made,] that a person [making such statements] might be reasonably expected to so conduct himself. . . ." ' [Cits.]" *Pinnell v. Yellow Cab Co.*, supra at 75-76.

It is possible that the death of appellants' son may not have occurred if *all* passengers had been subjected to a frisk of their persons or if *all* passengers had been required to pass through a metal detector. However, appellees are not insurers of the safety of their passengers. *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267) (1991). All that is required is the exercise of extraordinary diligence and, as I construe *Savannah, Fla. & W. R. Co. v. Boyle*, appellees may not be found to have breached that duty to exercise extraordinary diligence unless and until they knew or should have known of the dangerous propensity of the specific assailant who boarded the bus with appellants' son. Accordingly, unless and until *Savannah, Fla. & W. R. Co. v. Boyle*, supra, is overruled, I am constrained to follow it and to dissent to the majority's reversal of the grant of summary judgment in favor of appellees.

I am authorized to state that Chief Judge Sognier, Presiding Judge Birdsong and Judge Andrews join in this dissent.

DECIDED DECEMBER 16, 1992 —
RECONSIDERATIONS DENIED FEBRUARY 4, 1993 —

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., Charles F. Overby, Peter J. Daughtery, Jones, Boykin & Associates, John W. Jones, Noble L. Boykin, Jr., for appellants.*

*Lorrenzo C. Merritt, Lokey & Bowden, Malcolm Smith, Mel Mobley, for appellees.*