S93G0759. SOUTHEASTERN STAGES, INC. et al.
v. STRINGER et al.
S93G0763. TRAVEL, INC. v. STRINGER et al.
(437 SE2d 315)

Hunstein, Justice.

Walker L. Stringer, Jr. purchased a bus ticket in Augusta from Travel, Inc. of South Carolina on June 13, 1989 and boarded a bus owned and operated by Southeastern Stages, Inc. Shortly before the bus reached its Atlanta destination, he was shot and killed in an unprovoked attack by Perry Tyrone Irvin, a fellow passenger. Summary judgment was granted to Southeastern, its insurer, and Travel in the wrongful death action brought by Stringer's parents and the representative of his estate (the Stringers). A plurality of the Court of Appeals reversed the trial court. Stringer v. Southeastern Stages, 207 Ga. App. 223 (427 SE2d 494) (1992). We reverse the Court of Appeals.

A common carrier of passengers is not an insurer of the safety of its passengers, but must exercise extraordinary diligence to protect the lives and persons of its passengers. OCGA § 46-9-132. Extraordinary diligence is defined as "that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances." OCGA § 51-1-3; East Tenn. &c. R. Co. v. Green, 95 Ga. 736, 737 (22 SE 658) (1895).

Construed in favor of the Stringers, the evidence reflects that Southeastern knew about two separate occasions, in 1986 and 1988, in which a knife-wielding passenger had assaulted a bus driver while the bus was in transit. At the time of the 1989 incident in issue, Southeastern and its agent, Travel,[1] had made no changes in the security measures employed to enforce rules prohibiting passengers from boarding buses with deadly weapons, relying only on visual inspections of embarking passengers. When Irvin purchased his bus ticket, he informed the ticket agent that there "probably would be an undercover cop . . . looking for him" and that the agent should "tell them that he hadn't seen [Irvin]." Irvin later returned to the ticket agent to remind him not to "forget what I told you." The evidence before the trial court on summary judgment reflects that Irvin passed the

---

[1] For purposes of the defendants' motion for summary judgment, we will assume that Travel was acting as an agent for Southeastern.

driver's visual inspection and that his behavior remained unremarkable until he suddenly began firing on other passengers at the end of the trip.

Irvin's comments to the ticket agent and behavior before his unprovoked criminal actions on the bus, in and of themselves, are not sufficient to indicate that Irvin was anything more than a practical joker or a harmless eccentric. Hence, this evidence alone fails to raise any question of fact whether defendants, in the exercise of extraordinary diligence, were on notice that Irvin was or might be a danger to the carrier's passengers. See *Savannah &c. R. Co. v. Boyle*, 115 Ga. 836 (42 SE 242) (1902); *Pinnell v. Yellow Cab Co.*, 77 Ga. App. 73 (47 SE2d 774) (1948). However, the Stringers argue and the Court of Appeals held that because Southeastern knew about the 1986 and 1988 assaults, a question of fact exists whether the defendants reasonably should have anticipated criminal activity in general, thus calling into question the adequacy of the security measures taken to prevent or mitigate such danger and the interpretation to be given Irvin's unusual comments.[2] In so holding, the Court of Appeals did not apply common carrier law but instead relied exclusively on appellate decisions addressing OCGA § 51-3-1 and the duty an owner or occupier of land owes to invitees.

We disapprove that language in the Court of Appeals' opinion applying premises liability law to common carrier cases. The rule applicable in common carrier cases is that

> whenever a carrier, through its agents or servants, knows or has opportunity to know of a threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable. . . . It is [the common carrier's] duty to use proper care and vigilance to protect [passengers] from injuries by such persons that might reasonably have been foreseen and anticipated. . . . Knowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases. . . . [The carrier] is not regarded as an insurer of his passenger's safety against every possible source of danger; but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to

---

[2] This latter issue thus involves both the action (or lack thereof) taken by the ticket agent to whom Irvin made the comments and the action the ticket agent's superiors would have taken had the ticket agent reported Irvin's comments, as required by a Travel internal rule.

make his passenger's journey safe and comfortable.

(Punctuation omitted.) *Boyle*, supra at 838-839.

There are situations where prior violent activity can serve to place a common carrier on notice to anticipate such violence and, pursuant to the carrier's duty of extraordinary diligence, to protect its passengers from that violence. See *Metropolitan Transit System v. Burton*, 103 Ga. App. 688 (120 SE2d 663) (1961) and *Ga. R. &c. Co. v. Murphy*, 28 Ga. App. 173 (1) (110 SE 680) (1922) (carrier aware of prior violent and disorderly behavior of others in entering street cars at street car stop under a duty to anticipate such behavior and to protect passengers from that behavior). A common carrier's knowledge of a threatened danger is not restricted to knowledge that a *particular* individual possesses dangerous propensities,[3] since there are situations where a common carrier can reasonably anticipate misconduct without knowing which individual will misbehave, as, for example, in a situation where a particular route has a history of violent and assaultive conduct by passengers, such that violent incidents occur daily or weekly. See, e.g., *Lopez v. Southern Cal. Rapid Transit*, 710 P2d 907 (Cal. 1985). To hold, as Southeastern urges, that a carrier is absolved from liability unless it possesses knowledge of a *particular* individual's dangerous propensities would run contrary to well-established Georgia law that a carrier has a duty to use "all such reasonable precautions as human judgment and foresight are capable of" to protect its passengers. *Boyle*, supra.

However, a common carrier is not required to take measures to protect its passengers from the intentional misconduct of third persons until something occurs to put the carrier on notice that such conduct might be reasonably anticipated. *Paschal v. Ferguson Transport*, 189 Ga. App. 447, 448 (375 SE2d 901) (1988). To establish reasonable foreseeability, more than the mere possibility of an occurrence must be shown, since otherwise a common carrier would be made an insurer, with absolute liability to all passengers. See *Boyle*, supra at 839. Accordingly, we hold that " '(k)nowledge of conditions which are likely to result in an assault upon a passenger, or which constitute a source of potential danger, imposes the duty of active vigilance on the part of the carrier's agents and the adoption of such steps as are warranted in the light of existing hazards.' [Cit.]" *Gordon v. Chicago Transit Auth.*, 470 NE2d 1163, 1168 (Ill. App. 1984).

---

[3] Knowledge that a particular individual has dangerous propensities is not required where danger is presented in the form of an unruly mob or angry strikers. E.g., *Savannah Transit Co. v. Odum*, 105 Ga. App. 740 (125 SE2d 538) (1962) (stone thrown by angry member of group at bus stop); *Yellow Cab. Co. v. Carmichael*, 33 Ga. App. 364 (126 SE 269) (1925) (strikers attacked passenger when driver of taxi failed to turn at designated entrance).

Applying these principles to the case at bar, we do not agree with the Court of Appeals that Southeastern's knowledge of two assaults on bus drivers by knife-wielding passengers in 1986 and 1988 raised a question of fact whether Southeastern knew, had the opportunity to know, or could reasonably have anticipated the violent action of Irvin against the decedent. Although the prior incidents alerted Southeastern that violent passengers presented a "possible source of danger" to other passengers, *Boyle*, supra at 839, there was no evidence that conditions existing on the Augusta-Atlanta route travelled by the decedent were likely to expose passengers to a reasonably foreseeable danger. As noted earlier, Irvin's comments and behavior alone were not sufficient to create a fact question whether Southeastern failed to exercise the extraordinary diligence required of it. Accordingly, as no fact questions remain whether Southeastern breached its duty to use "all such reasonable precautions as human judgment and foresight are capable of," *Boyle*, supra at 839, to protect the Stringers' decedent, the trial court correctly granted summary judgment to defendants.[4]

*Judgment reversed. All the Justices concur, except Judge Lowrey S. Stone, who dissents. Carley, J., disqualified.*

STONE, Judge, dissenting.

I respectfully dissent. The statements made by Irvin to the ticket agent of defendant Travel, Inc. (which, in turn, was ticket agent in Augusta for Southeastern Stages, Inc.) while purchasing a ticket to ride a Southeastern bus en route from Augusta to Atlanta, that "probably there would be an undercover cop . . . looking for him" and that the ticket agent should "tell them he hadn't seen [Irvin]," that Irvin later returned to the ticket agent and reminded him not to "forget what I told you" were sufficient to raise a genuine issue of material fact for the jury to resolve, particularly in light of the evidence of previous violent attacks with weapons on defendants' busses, and the common-place occurrence of various dangerous and anti-social acts afflicting our society in recent years.

Whether Irvin was, on the one hand, a jokester or harmless ec-

---

[4] Contrary to the Stringers' assertion that affirmance of the trial court holds carriers to a *lesser* duty of care than that required of landowners, our ruling recognizes that the different duties placed on common carriers and landowners reflect the different risks faced by those to whom the duty is owed. See *Central of Ga. R. Co. v. Brown*, 141 Ga. 553 (1) (81 SE 857) (1914); *Columbus Transp. Co. v. Curry*, 104 Ga. App. 700 (4) (122 SE2d 584) (1961); *Delta Air Lines v. Millirons*, 87 Ga. App. 334, 340-342 (73 SE2d 598) (1952). See also Harper, James, and Gray, The Law of Torts (2nd ed. 1986), Vol. 3, § 16.14. The hazards a landowner can reasonably anticipate his invitee to encounter, based on static conditions within the finite boundaries of his property, are not coextensive with the hazards a common carrier, in the exercise of the extraordinary diligence required of it in the reception, transportation, and discharge of its passengers, might reasonably anticipate its passengers to encounter.

centric, or on the other hand, an armed and dangerous fugitive from justice or escapee from a high-security mental hospital, who might endanger other bus passengers, and what if any action should have been taken by the ticket agent in consequence of Irvin's statement and actions, in the exercise of extraordinary care by defendants for the safety of the other bus passengers, are genuine issues of material fact which should be resolved by a jury and summary judgment should not have been granted. Additionally, while the evidence did not show whether or not the "undercover cop" was in search of Irvin to arrest him as a criminal or escaped mental defective, or merely to interview him as a possible witness in a criminal investigation, the issue of what should have been the appropriate response of the ticket agent upon being informed by Irvin that Irvin was being sought by a police officer for whatever purpose is a matter for resolution by a jury.

I would affirm the judgment of the Court of Appeals that the trial court erred in granting defendants' motion for summary judgment, although not on any basis of the law relative to criminal attacks occurring on real property, which I do not consider applicable in this case.

DECIDED DECEMBER 2, 1993 —
RECONSIDERATION DENIED DECEMBER 16, 1993.

*Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Brian R. Neary, Chambers, Mabry, McClelland & Brooks, Douglas F. Aholt, Beth L. Singletary, Lokey & Bowden, Malcolm P. Smith, G. Melton Mobley,* for appellants.

*Butler, Wooten, Overby & Cheeley, James E. Butler, Jr., C. Frederick Overby, Peter J. Daughtery, Jones, Boykin & Associates, John Wright Jones, Noble L. Boykin,* for appellees.