Atkins v. City of Burlington Sch. Dist., No. S0463-11 CnC (Crawford, J., Dec. 6, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

SUPERIOR COURT
Chittenden Unit

CIVIL DIVISION
Docket No. S0463-11 CnC

Henry Atkins b/n/f
Susan Huling
    Plaintiff

  v.

City of Burlington School District and
Chittenden County Transportation Authority
    Defendants

## DECISION ON CCTA'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Henry Atkins, by his next friend Susan Huling, seeks to hold the City of Burlington School District and Chittenden County Transportation Authority (CCTA)[1] liable for injuries he sustained when his arm was broken by a fellow student on the bus. Both defendants have moved for summary judgment. CCTA has requested the court to expedite ruling on CCTA's motion. Accordingly, this decision does not address Burlington School District's motion, which is not yet ripe.

## FACTS

The following facts are undisputed for the purposes of this motion. During the 2009–2010 school year, Henry Atkins was enrolled in the seventh grade at Edmunds Middle School in Burlington, Vermont. Lindsay Legault-Knowles was also a student at Edmunds that year.

Chittenden County Transportation Authority is a public transportation authority which is chartered to provide transportation for municipal members, including the City of Burlington. CCTA is paid by the Burlington School District to provide transportation to its students. Some CCTA buses are designated "neighborhood special" buses because they follow routes used by students to travel by bus between school and home. While the neighborhood special buses are primarily used for student travel, members of the public may use these buses for transportation.

On March 18, 2010, Henry boarded the CCTA bus after school. Lindsay boarded the bus as well and sat directly behind Henry. The two had been arguing for the previous few days about the existence of a slang word. Once seated on the bus, they continued their argument for three to five minutes. Henry remembers doing a "victory dance" in front of Lindsay, waving his hands in the air and in front of Lindsay's face. Lindsay then grabbed Henry's right arm and pulled it back and down across the top of the bus seat with such force that his humerus bone broke.

---

[1] Plaintiff refers to Defendant as the "Chittenden County Transit Authority" in his complaint. As this is merely a technical error and there is no doubt as to the identity of Defendant, the court has amended the caption to refer to Defendant by its correct name for purposes of clarity.

The only adult on the CCTA bus at the time was the bus driver, Omer Pilav. Pilav had arrived at the bus stop in front of Edmunds at approximately 2:50 p.m. that day. As usual, he parked the bus and turned off the engine. The bus is equipped with a video camera, but it does not record when the bus is turned off.

Students began boarding the bus at approximately 3:00 p.m. Approximately 40 students boarded the bus. Pilav was on the bus at all times when children were boarding and on the bus. Pilav was scheduled to depart from the bus stop at 3:10 p.m., and started the engine at approximately 3:07. Lindsay broke Henry's arm at or around the same time. Pilav did not see the altercation. He was sitting at the front of the bus in the driver's seat, and students were standing in the aisle between him and where Henry and Lindsay were located. Once he was alerted to Henry's situation, he assisted Henry and contacted school and medical authorities.

There is no evidence that CCTA had actual or constructive notice of any problems involving Henry or Lindsay prior to the time of the incident. Pilav had not had problems on this route in the past. He occasionally has separated disruptive teenagers from each other on other bus routes. CCTA policy prohibits passengers from engaging in violent or harassing behavior, and directs its bus drivers to request that the offending action cease.

The School Resource Officer, Jamie Chase, felt that some CCTA buses—although not this route—were overcrowded. He had shared his concerns both before and after the incident with Donna Roberts, the Vice Principal at Edmunds Middle School. He did not recall sharing these concerns with CCTA. Although he believed that Roberts might have discussed the issue with CCTA, there is no evidence that such discussions actually occurred.

ANALYSIS

Henry claims that CCTA was negligent because it failed to properly supervise the bus and thereby prevent Lindsay from harming him. To support his negligence claim, Henry must show that CCTA owed him a legal duty, that CCTA breached that duty, that the breach was the proximate cause of his injury, and that he suffered actual loss or damage. *Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63.

CCTA is a common carrier. See 5 V.S.A. § 1821. Common carriers are obligated to exercise due care under the circumstances to protect their passengers against unreasonable risk of physical harm. *Ploesser v. Burlington Rapid Transit Co.*, 121 Vt. 133, 139 (1959). Here, the circumstances involve schoolchildren; thus, the CCTA bus driver had a duty to "take into account the age, situation and disposition of his juvenile passengers, and act accordingly for their protection." *Bridge v. Woodstock Union High Sch. Dist.*, 127 Vt. 598, 599 (1969). A common carrier's duty to protect its passengers extends to risks arising from the improper acts of third persons, even if those acts are criminal. Restatement (Second) of Torts § 314A, cmt. d. (1965).

However, the risk must be reasonably foreseeable; a bus driver "is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate." *Id*. cmt. e. Courts in other jurisdictions have held that a common carrier is not liable for injury to a passenger caused by the wrongful conduct of another passenger, unless the carrier knew or should have known that the first passenger was in danger. See, e.g., *Se. Stages, Inc. v. Stringer*, 437 S.E.2d 315, 318 (Ga. 1993). Of course,

[a] common carrier's knowledge of a threatened danger is not restricted to knowledge that a particular individual possesses dangerous propensities, since there are situations where a common carrier can reasonably anticipate misconduct without knowing which individual will misbehave, as, for example, in a situation where a particular route has a history of violent and assaultive conduct by passengers, such that violent incidents occur daily or weekly.

*Id.* (citing *Lopez v. S. Cal. Rapid Transit Dist*., 710 P.2d 907 (Cal. 1985)).

Without such a showing, however, a carrier cannot be held liable for a sudden and unexpected attack by one passenger against another. See, e.g., *Rabadi ex rel. Rabadi v. Cnty. of Westchester*, 554 N.Y.S.2d 291, 293 (N.Y. App. Div. 1990) (neither county nor public bus company were liable for broken nose of student who was punched by fellow student while riding bus to school; though assailant had been disruptive in past, there was no warning that assailant would attack student). "To establish reasonable foreseeability, more than the mere possibility of an occurrence must be shown, since otherwise a common carrier would be made an insurer, with absolute liability to all passengers." *Se. Stages, Inc*., 437 S.E.2d at 318 (fact that bus company knew about two prior occasions where knife-wielding passenger had assaulted driver did not put company on notice to anticipate unprovoked shooting of one passenger by another).[2]

Here, the only evidence that CCTA knew or should have known that Henry was in danger of being injured by Lindsay or anyone else is the hearsay statement by Mr. Chase that Donna Roberts may have raised concerns about overcrowding with CCTA. This is insufficient to support a claim against CCTA. There is no evidence to show that violent assaults regularly occurred on this route. The bus driver specifically stated that he had not previously had any trouble on the route. It is true that no other adults were on the bus that day besides the bus driver but the evidence shows that this was typically the case. The fact that the bus driver occasionally has had to separate unruly teenagers on other routes is legally insufficient to put him or CCTA on notice that Henry was in physical danger on the day in question.

Henry himself states that he and Lindsay did not begin arguing until after they took their seats near the rear of the bus. Thus, there was nothing to alert the bus driver that the two of them were likely to start fighting. Henry and Lindsay did not engage in physical contact prior to her violent act, nor is there any evidence that they were arguing loudly enough for the bus driver or other passengers to notice. The entire episode took place in a matter of a few minutes, and the bus driver responded appropriately once he became aware of Henry's injury.

Henry argues that the bus was overcrowded, which prevented the bus driver from being able to properly supervise the students. He has not shown that the bus was more crowded than usual, or that the number of students on board exceeded capacity. Rather, the evidence shows

---

[2] The case relied upon by plaintiff is not to the contrary. See *Maley v. Children's Bus Serv., Inc*., 117 N.Y.S.2d 888 (N.Y. Sup. Ct. 1952). In *Maley*, a girl whose eye was injured by a paper clip shot by a fellow student on a bus sued the bus company. The evidence showed that a rowdy group of boys was shooting paper clips at the girls prior to boarding, that one of the girls was hit as she boarded the bus and cried out, and that the boys continued to shoot paper clips at the ceiling and out the windows of the bus until the plaintiff was injured. The boys had been disruptive before and the bus had returned to school at least once for disciplinary action. Under these circumstances, the court held that the bus driver knew or should have known of the boys' "rowdyism" and should have ordered them to stop. *Id*. at 890.

that there were students standing in the aisle and taking their seats before the bus departed. This is normal and expected behavior for passengers boarding a bus and is not a basis for holding CCTA liable.

The undisputed evidence shows that this was a sudden, unexpected attack that CCTA could not reasonably have anticipated at the time. Thus, CCTA cannot be held liable for Henry's injuries.

CCTA's motion for summary judgment is granted.

Dated at Burlington, Vermont this _____ day of December, 2012.

_____
Geoffrey Crawford,
Superior Court Judge

4