## SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* BOYLE, and *vice versa.*

1. Whenever a carrier, through its agents and servants, knows or has opportunity to know of a threatened injury to a passenger from a third person, whether such person is a passenger or not, or when the circumstances are such that injury to a passenger from such a source might reasonably be anticipated, and proper precautions are not taken to prevent the injury, the carrier is liable for damages resulting therefrom.

2. The presence upon a train of two negro tramps, secreted and stealing a ride thereon, would not alone be sufficient to cause the employees in charge of the train to suspect that such tramps were armed with deadly weapons, and to anticipate that when brought into the train under arrest they might endeavor to escape and, while an employee was attempting to prevent the escape, make a murderous assault with such weapons upon one to whom the railroad com-

pany owed the duty of protection and who was taking no part in the effort to prevent the escape.

. Submitted May 1,—Decided July 18, 1902.

Action for damages. Before Judge Seabrook. Liberty superior court. January 8, 1902.

*W. L. Clay, Shelby Myrick,* and *W. G. Charlton,* for the railroad company. *Twiggs & Oliver,* contra.

COBB, J. Boyle sued the railway company, alleging in his petition substantially the following facts: The plaintiff was an express messenger, and his duties required him to ride upon the train of the defendant, and the defendant received him upon its train in that capacity. On a day named two negro tramps secreted themselves on the front platform of the car in which plaintiff was riding in the discharge of his duties, and, being discovered by the conductor, were taken in charge by him and the baggage-master and placed in that portion of the coach set apart for the use of the express company where the plaintiff was attending to his duties as messenger. The conductor and baggage-master did not search the tramps, did not place a guard over them, and did not securely bind them, but attempted to detain them in the coach by negligently and carelessly tying one of the two ends of a short rope around one wrist of each tramp, leaving a play of about four feet between them, thus permitting the free use of their entire bodies. The tramps attempted to escape from the train by jumping from the side door of the car, and were resisted and restrained by the baggage-master, who happened to be passing at the time. In the struggle which resulted both tramps drew revolvers, which they had secreted about their clothing, and one of them discharged his revolver at plaintiff, who was six feet away, the ball striking plaintiff in the left knee joint, he at the time taking no part in the struggle between the tramps and the baggage-master. During the struggle the baggage-master and both tramps fell to the floor, and one of the tramps raised on his knees and fired again at plaintiff, but the ball did not strike plaintiff but went through the top of the car. As a result of the wound in the knee joint plaintiff suffered great pain and agony, was prevented from attending to his regular duties for a period of some weeks, and was forced to incur large expense in medical attention, etc. It is alleged that the injuries resulting to plain-

tiff "were due entirely to the gross and inexcusable negligence and want of caution and foresight" on the part of the defendant, its servants and employees in charge of the train, in placing the tramps in the car, in failing to search and take from them the revolvers concealed in their clothing, in failing to securely bind them, and in failing to extend to plaintiff such other and further protection as was necessary to prevent the injuries; all of which it is alleged it was the duty of the defendant to have done. It is also alleged that the plaintiff did not in any way consent to or contribute to his injuries, by participating in the struggle between the baggage-master and the tramps, or otherwise. To this petition the defendant interposed a general demurrer, to the overruling of which it excepted. The case subsequently proceeded to trial, and upon motion of the defendant the judge granted a nonsuit. To this judgment the plaintiff excepted. The exception which complains of the overruling of the demurrer will be first disposed of.

There does not seem to be any serious controversy between counsel as to what is the law of this case. It is conceded that the duty which the railway company owed to the plaintiff was the same duty which it would owe to a passenger under similar circumstances. It is the duty of a railway company to protect its passengers from insult or injury at the hands of fellow-passengers or of third persons, when the circumstances are such that a person in the exercise of that degree of diligence known to the law as extraordinary care would see, or should apprehend, that the passenger is in danger of insult or injury; and when the circumstances were such that the employees in charge of the train, in the exercise of the degree of diligence above referred to, should have foreseen that an insult or injury was to be reasonably apprehended, and failed or refused to use the means at hand to protect the passenger therefrom, the railway company is liable to the passenger for any damages he sustains as a consequence of such failure or refusal. " The general rule," says the American & English Encyclopædia of Law, (vol. 5 (2d ed.), 553), "would seem to be that whenever a carrier, through its agents or servants, knows or has opportunity to know of a threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable." Mr. Elliott in his work on Railroads

(vol. 4, § 1639), in referring to the duty of protection against third persons or other passengers which railroad companies owe to their passengers, says: " It is their duty to use proper care and vigilance to protect them from injuries by such persons that might reasonably have been foreseen and anticipated." Mr. Fetter, in referring to the subject now under consideration, says: "Knowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases." 1 Fet. Car. § 98. Mr. Hutchinson says: "The law now seems to be well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger; but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passenger's journey safe and comfortable." Hutch. Car. § 596. See also: Spohn v. Railroad Co. (Mo.), 26 Am. & Eng. Rd. Cas. 252; Felton v. Rd. Co. (Iowa), 27 Id. 229; Sira v. Rd. Co., 115 Mo. 127, s. c. 58 Am. & Eng. Rd. Cas. 538; Louisville & Nashville Rd. Co. v. McEwan (Ky.), 2 Am. & Eng. Rd. Cas. (N. S.) 438; West Memphis Packet Co. v. White (Tenn.), 38 L. R. A. 427; *Richmond & Danville Rd. Co.* v. *Jefferson*, 89 *Ga.* 554.

This is not a case where the passenger claims damages for the reason that the conductor and other employees in charge of the train failed or refused to protect him after it became apparent that the injury might result to him from the presence upon the train of a third person; but the plaintiff's case depends upon whether the circumstances alleged in the petition were such that the employees in charge of the train, in the exercise of extraordinary care for his protection, that is, using the utmost vigilance and care or that extreme care and caution which very prudent persons exercise, should have foreseen that the tramps who had been arrested by them and brought into that part of the coach in which the plaintiff's duty required him to ride were armed with deadly weapons and would attempt to escape and, while making this attempt, would discharge the deadly weapons at one who was taking no part in the efforts made by an employee to prevent such escape. If an extremely prudent person would have foreseen that this would have probably happened, then it was the duty of the employees on the train to take

all reasonable precautions to prevent such an occurrence, and it would have been their duty to search the tramps to see if they were armed, and to have securely bound them.    If there was nothing in the circumstances under which the tramps were arrested, or in their manner when brought ,into the train, to cause an extremely prudent person to apprehend that they were dangerous characters and would probably resort to violence in order to escape from the train, and nothing to indicate to such a person that they were probably armed with deadly weapons, then a failure to search the persons of the tramps and to securely bind them would not be such negligence on the part of the employees in charge of the train as to render the company liable to the plaintiff.    There is nothing alleged in the petition as to the character of these tramps.    It does not appear whether they were known or unknown to the employees in charge of the train.    There is nothing in the allegations showing that the employees should, on account of their knowledge or past experience, as extremely prudent persons, have known or apprehended that tramps engaged in stealing a ride upon the train at the place where and the circumstances under which these were discovered were probably dangerous characters and their presence a menace to passengers and others to whom the railroad company owed the duty ,of protection.    The allegations are simply that the persons were negroes, that they were tramps, and that they were engaged in stealing a ride upon the train.    Is even an extremely prudent person bound to presume that a negro tramp stealing a ride upon a train is such a dangerous person that he should not be permitted to stay upon the train unsearched and unbound ?    Simply because a person is a negro he is not to be necessarily deemed dangerous.    On the contrary experience has demonstrated that as a rule negroes are not dangerous persons.    Is a tramp necessarily a dangerous person ?    The word "tramp" indicates "a foot traveler; a tramper; often used in a bad sense for a vagrant, or wandering vagabond." Web. Int. Dict.    It is defined by the Standard Dictionary to be "an idle wanderer; itinerant beggar ; vagrant; vagabond."    Because a man is a tramp he is not necessarily dangerous.    The idea conveyed to the mind by the word is that simply of an idle, worthless fellow who wanders about the country seeking to secure a living without toil.    Simply because these men were negro tramps it was not to be inferred, even by an extremely prudent person, that

they were characters so dangerous as to make it altogether unsafe for any person to be lodged in the same car with them.　But it is said that these negro tramps were violating the law.　This is true. To steal a ride upon a train is a crime in this State, but it is only a misdemeanor.　While it may be that even an ordinarily prudent person would have reason to apprehend that negro tramps under arrest for a misdemeanor would escape if afforded a reasonable opportunity, still an extremely careful person could not reasonably apprehend that in making such an attempt they would, in order to effectuate it, make a murderous assault with a deadly weapon either upon one who made an effort to thwart this attempt or upon another who was taking no part in such effort.　It is true that the petition alleges in general terms that the defendant was guilty of negligence, but it also sets forth what is claimed by the pleader to be the act of negligence, and the only act of negligence alleged is the failure of the company's servants to search the tramps for weapons, and to securely bind them or place a guard over them.　The conclusion of the pleader that this is negligence does not prevent the court from passing upon the question as to whether the facts alleged show the company to have been negligent.　There is nothing in the allegations of the petition from which it appears that the employees in charge of the train, in the exercise of that high degree of care which the railway company owed to the plaintiff to protect him from injury at the hands of those who might be upon its train with its consent or with its knowledge, could and should have foreseen that the two negro tramps would, after having been arrested and brought into the train, attempt to escape and in so doing commit a murderous assault upon those endeavoring to prevent his escape, or upon others who were taking no part in such efforts.　The petition fails to set forth a cause of action, and should have been dismissed on demurrer.　The judgment overruling the demurrer will therefore be reversed.

In reference to the exception of the plaintiff that the court erred in granting a nonsuit, as it appeared that the evidence supported the averments of the petition substantially as laid, the court should not have granted a nonsuit.　See *Flewellen* v. *Flewellen*, 114 *Ga.* 403, and cases cited; *Roberts* v. *Fleming*, Id. 634.　But as the conclusion is now reached that the petition should have been dismissed on demurrer, while the judgment granting the nonsuit will be re-

versed, direction will be given that the effect of this reversal shall not be to reinstate the case, which will have been dismissed when the judgment of this court reversing the judgment overruling the demurrer shall have been entered in the court below.

*Judgment in the one case reversed; in the other, reversed with direction.   All the Justices concurring, except Lewis, J., absent.*