238.   GRIMSLEY *v.* ATLANTIC COAST LINE RAILROAD
                      COMPANY.

1. While a carrier is not to be regarded as an insurer of his passenger's safety against every possible source of danger, it is none the less his duty to use extraordinary care and diligence to protect the passenger from injuries, including injuries by fellow passengers or third persons. As a part of this protection, the carrier is bound to use that extreme care and caution contemplated of very prudent and thoughtful persons to anticipate an injury threatened to the passenger by fellow passengers or third persons.
2. Whether, in the exercise of the extraordinary care required, the carrier should have apprehended that an intoxicated passenger, who was armed with a pistol and who had been shooting it while on the train, would jump from the train at a station and fire the pistol into the coach, injuring another passenger, is a question to be decided by the jury, and not by the court on demurrer.

Action for damages, from city court of Camilla—Judge Scaife. January 29, 1907.

Argued March 27,—Decided April 4, 1907.

*Hill & Royal,* for plaintiff.

*Bennet & Conyers,* for defendant.

POWELL, J.   The plaintiff's petition is predicated upon substantially the following state of facts: Grimsley, the plaintiff, was a passenger upon the defendant's line of railway, en route from Albany, Ga., to Pelham, Ga. At Albany one Rackley also boarded the train as a passenger. The latter, at the time of entering the train, was in an intoxicated or partially intoxicated condition, and was very disorderly. As the journey progressed he continued intoxicated and disorderly and discharged his revolver several times on the train. These facts were known to the defendant's servants in charge of the train; but they failed to quiet him or to eject him, or to put him under restraint. As the train was pulling up to the station at Pelham, Rackley jumped off and discharged his revolver into the car where the plaintiff was riding and the ball struck the

plaintiff in the leg, inflicting certain definitely described injuries. The trial court sustained a general demurrer, and the plaintiff excepts.

1. The proposition announced in the first headnote is now so well settled, that we do not deem it necessary to discuss it or to fortify it with authority, further than to cite the late leading case of *Savannah Ry. Co.* v. *Boyle,* 115 *Ga.* 836, wherein it is clearly asserted.

2. Indeed, in this case we are not called upon for an exposition of the law of the carrier's duty in regard to the passenger's safety, nor for an exegesis of the terms by which such duty is defined; but the question is solely as to the applicability of the recognized rule to the stated facts. Both parties cite and rely upon the *Boyle* case, supra. The defendant in error says that the facts alleged in the petition do not show a breach of duty; the plaintiff in error says they do. The nature of the jurisdiction conferred upon this court by the constitution compels us to assume towards such questions very much the attitude of the landlord in one of George Eliot's stories. "'But,' said the farrier, I'm afraid o' neither man nor ghost, and I'm ready to lay a fair bet,—I arn't a turn-tail cur.' 'Ay, but there's this in it, Dowlas,' said the landlord, speaking in a tone of much candor and tolerance. 'There's folks i' my opinion, they can't see ghos'es, not if they stood as plain as a pike-staff before 'em. And there's reason i' that. For there's my wife, now, can't smell, not if she'd the strongest o' cheese under her nose. I never see'd a ghost myself; but then I says to myself, "Very like I haven't got the smell for 'em." I mean, putting a ghost for a smell, or else contrairiways. And so I'm for holding with both sides; for, as I say, the truth lies between 'em. And if Dowlas was to go on stand and say he'd never seen a wink o' Cliff's Holiday all the night through, I'd back him; and if anybody said as Cliff's Holiday was certain sure for all that, I'd back him too. For the smell's what I go by.'" We quote this as illustrative of our attitude to such matters, even though it be upon pain of having some of the profession take the same view as did the uncomprehending farrier; for, as the story goes: "'Tut, tut,' he said, setting down his glass with refreshed irritation; 'what's the smell got to do with it?'" Of course, there is a point at which the facts are no longer issuable, but till that point is reached, if the jury says

"ghost," we say "ghost;" if the jury says "negligence," we say "negligence," and vice versa.

We think the inferences to be drawn from the petition in this case are issuable, and therefore the jury and not the court must pass judgment upon them. We can not say, as a matter of law, that the carrier, viewed in light of the degree of care imposed, ought not to have anticipated that an intoxicated and disorderly passenger, who had already shown his disregard for the law and for the rights of others by firing off his pistol while on the train, would not injure his fellow passengers by further acts of wantonness. Compare the following cases in which liability against the carrier has been sustained: *Holly* v. *Atlanta Street Ry. Co.*, 61 *Ga.* 215, where a passenger was injured by a fight between other persons on board the car; West Memphis Packet Co. *v.* White (Tenn.), 38 L. R. A. 427, where the plaintiff was accidentally shot by a passenger who was, in the presence of the company's employees, explaining the operation of a repeating shotgun; King *v.* Ohio Ry. Co., 22 Fed. 413, where a person was shot through the wanton or insane act of a drunken fellow passenger; Norwich Transportation Co. *v.* Flint, 80 U. S. (13 Wall.) 3, and Flint *v.* Norwich Transportation Co., 6 Blatchf. (U. S. Cir.) 158, where one of a number of disorderly soldiers dropped a musket, which was discharged and wounded a passenger on a steamboat; Partridge *v.* Woodland Steamboat Co., 66 N. J. L. 290, where a passenger was injured by a drunken fellow passenger, with whom he had no quarrel; Houston R. Co. *v.* Phillio (Tex.), 12 Am. Neg. Rep. 637, where the plaintiff and his wife, who were waiting to take the train, were assaulted in the waiting-room by a drunken stranger; Illinois Central R. Co. *v.* Minor, 69 Miss. 710, where the plaintiff was injured by the careless discharge of a pistol in the hands of a drunken fellow passenger on a railway coach; Spangler *v.* St. Joseph Ry. Co., 68 Kan. 46 (104 Am. St. 391, 74 Pac. 607), where it is held that it is the duty of a railroad company to exercise the strictest diligence to protect passengers on its trains from the assaults of fellow passengers, not only while such fellow passengers remain on the train, but also after they have alighted therefrom at the station of their destination, whenever the company knows of the threatened injury or reasonably might anticipate that under all the circumstances it will occur (in that case the plaintiff was injured by missiles thrown

through the window by a disorderly crowd who had just left the train); Wright v. Chicago R. Co., 4 Colo. App. 102 (8 Am. Neg. Cases, 89), where plaintiff was assaulted and robbed by a disorderly crowd who had been negligently allowed to get on the train; Pittsburg Ry. Co. v. Hinds, 53 Pa. St. 512 (8 Am. Neg. Cases, 602), where the conductor allowed a lot of drunken and quarrelsome men to enter the ladies' coach and injure a female passenger. We might multiply citation in extenso, but the above is sufficient. Vinton v. Middlesex R. Co., 93 Mass. (11 Allen) 304 (87 Am. Dec. 714, 8 Am. Neg. Cases, 369), a leading American authority asserting not only the right but also the duty of a carrier to eject an intoxicated person, or one in such condition as to induce the conductor to believe that the conduct of such person will become offensive or annoying to other passengers, rests largely upon the consideration that an injury by such a person to a fellow passenger would give a cause of action against the carrier. We consider the doctrine of the Vinton case good law, and we would be much more inclined to view liberally, in favor of the carrier, a suit brought by the intoxicated or disorderly passenger for an ejection than we would a suit brought by a passenger for injuries occasioned by the carrier's failure to exercise the right and the duty to restrain or eject him. Decent and orderly passengers are entitled to claim a consideration superior to that to be accorded to those who are drunk or disorderly.                              *Judgment reversed.*