A03A2492. ROUSE v. METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY et al.
(597 SE2d 650)

BARNES, Judge.

Leslie Rouse appeals the grant of summary judgment to the
Metropolitan Atlanta Rapid Transit Authority and the Millar Eleva-
tor Service Company in her action against them arising from an
incident on an escalator in the Five Points MARTA station. In her
complaint, Rouse alleged that the defendants were negligent in
allowing the escalator to be used when a gap existed at the bottom of
the escalator that would allow a user's foot to be caught in the
escalator's machinery. For the reasons that follow, we reverse.

1. The standards applicable to motions for summary judgment
are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474)
(1991):

> To prevail at summary judgment under OCGA § 9-11-56, the
> moving party must demonstrate that there is no genuine
> issue of material fact and that the undisputed facts, viewed in
> the light most favorable to the nonmoving party, warrant
> judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant*
> may do this by showing the court that the documents, affi-
> davits, depositions and other evidence in the record reveal
> that there is no evidence sufficient to create a jury issue on at
> least one essential element of plaintiff's case. If there is no
> evidence sufficient to create a genuine issue as to any essen-
> tial element of plaintiff's claim, that claim tumbles like a
> house of cards. All of the other disputes of fact are rendered
> immaterial. See, e.g., *Holiday Inns v. Newton*, 157 Ga. App.
> 436 (278 SE2d 85) (1981). A defendant who will not bear the
> burden of proof at trial need not affirmatively disprove the
> nonmoving party's case; instead, the burden on the moving
> party may be discharged by pointing out by reference to the
> affidavits, depositions and other documents in the record
> that there is an absence of evidence to support the nonmoving
> party's case. If the moving party discharges this burden, the
> nonmoving party cannot rest on its pleadings, but rather
> must point to specific evidence giving rise to a triable issue.
> OCGA § 9-11-56 (e).

Id. "In other words, summary judgment is appropriate when the
court, viewing all the facts and reasonable inferences from those facts
in a light most favorable to the non-moving party, concludes that *the*

*evidence* does not create a triable issue as to each essential element of the case." (Emphasis supplied.) Id. at 495.

Further, when a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

2. The standard of care applicable to common carriers applies to MARTA in this case. *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 458 (2) (475 SE2d 188) (1996); *Sparks v. MARTA*, 223 Ga. App. 768 (1) (478 SE2d 923) (1996). In Georgia, "a common carrier of passengers is not an absolute and unqualified insurer of the safety of its passengers. Rather, '(a) carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers but is not liable for injuries to them after having used such diligence.' OCGA § 46-9-132." *Mattox v. MARTA*, 200 Ga. App. 697 (409 SE2d 267) (1991). Further, a common carrier cannot waive or release this duty, or avoid it by contracting with a third party. *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 655 (445 SE2d 771) (1994). Extraordinary diligence is "that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances." (Citation and punctuation omitted.) *Southeastern Stages v. Stringer*, 263 Ga. 641 (437 SE2d 315) (1993). Whether the carrier has exercised extraordinary care and diligence is ordinarily for the jury. *Mattox*, supra, 200 Ga. App. at 698.

3. Giving Rouse the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions therefrom most favorably toward her, the evidence shows that Rouse was about to get off the escalator after descending from street level when the incident occurred. First, her left foot was caught in the escalator, and, after she pulled her left foot free, her right foot was caught underneath the comb plate of the escalator. MARTA employees had to reverse the escalator to free Rouse's foot.

When her foot was released, it had cuts on the bottom, her fourth toe was broken, her foot was cut on the top, and her big toe had a piece of flesh cut out. She was taken to Grady Hospital for medical treatment, which included putting a metal rod in her broken toe.

Ms. Rouse's cousin, who was traveling behind her on the escalator, ran down the escalator to assist her. She stated that while Rouse's foot was being removed from the escalator, she saw that the

escalator had chips or cracks running through it. Rouse testified that a part which would have kept her foot from slipping underneath the escalator was missing.

Rouse filed suit, alleging that both defendants were negligent in allowing the escalator to be used when a dangerous condition existed, and that MARTA had failed in its obligation to use reasonable and diligent inspection to monitor the condition of the escalators and assure that they were in proper working order. The defendants filed a combined answer denying liability and then moved for summary judgment. They contended they had no prior knowledge of any escalator malfunction and no evidence shows that they failed to service and maintain the escalator or that they did so negligently.

In support of their motion the defendants submitted the affidavit of a MARTA escalator safety inspector, who stated that the escalator had been repaired and was in proper working order. The affidavit also stated that the inspector was called to the scene of Rouse's accident and saw them remove her foot from the escalator. He examined the comb plate at that time, which had no missing teeth and was not defective.

The defendants also submitted the affidavit of an escalator mechanic who worked for Millar. The mechanic's affidavit described how he and a co-worker inspected the escalators each day and looked at the comb plate at the bottom of each escalator. On February 29, 2000, he replaced two comb plates and performed other maintenance on the escalator on which Rouse was injured, and after that, he saw no defects on that escalator in the weeks before Rouse's injury. After the work was done, the comb plates were in proper working order. He was on the scene of Rouse's accident and put a crowbar between the floor plate and the step to raise the comb plate and free Rouse's foot, thus breaking the plate.

The deposition of a former Millar elevator foreman revealed that a comb plate impact switch existed that would automatically turn off the escalator in circumstances like this, but that MARTA had never requested that the switch be installed. The switch's purpose is to prevent injury to anyone coming in contact with the comb plate. The foreman knows of other escalators in the MARTA system with such a switch, but these escalators were manufactured by a different company. These switches, however, can be added to an existing escalator, and while no code requirement for installation of these switches currently exists, if an escalator is upgraded in any way, the code requires that the switches be added.

The foreman was also on the scene of Rouse's accident and saw no breaks in the comb plate until it was broken in the process of getting Rouse's foot freed from the escalator. In the foreman's opinion, Rouse

did not step off the escalator at the bottom, and she was "basically turned sideways riding it down."

MARTA and Millar contend that this evidence shows that they were not negligent, that they had a regular program of inspecting the escalators, and that they had no notice of any defect in the comb plate. Rouse contends, however, that the evidence shows that MARTA and Millar failed to exercise extraordinary diligence because they failed to install a comb plate switch which would have turned off the escalator and prevented her injury.

Although MARTA and Millar contend that we cannot consider the comb plate switch argument because Rouse did not raise it below, we find that this contention is without merit. It is true that Rouse did not explicitly argue that MARTA and Millar had a duty to install the switch, but this does not mean that the issue was not raised.

Rouse raised the issue that MARTA and Millar failed to exercise extraordinary diligence and that issue includes any failure to exercise extraordinary diligence that is raised by the evidence. The testimony from the foreman's deposition, stated above, shows that the issue of the comb plate switch was raised by the evidence before the court. Accordingly, we find that the allegation concerning the comb plate switch was properly before the court below.

Although speaking in terms of a railroad involving passengers in danger, our Supreme Court addressed this issue over 100 years ago.

> [W]hen the circumstances are such that a person in the exercise of that degree of diligence known to the law as extraordinary care would see, or should apprehend, that the passenger is in danger of insult or injury; and when the circumstances were such that the employees in charge of the train, in the exercise of the degree of diligence above referred to, should have foreseen that an insult or injury was to be reasonably apprehended, and failed or refused to use the means at hand to protect the passenger therefrom, the railway company is liable to the passenger for any damages he sustains as a consequence of such failure or refusal. The general rule . . . would seem to be that whenever a carrier, through its agents or servants, knows or has opportunity to know of a threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable. . . . Knowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases. . . . The law now seems to be well settled that the carrier is obliged to

protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger; but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passenger's journey safe and comfortable.

(Citation and punctuation omitted.) *Savannah &c. R. Co. v. Boyle*, 115 Ga. 836, 838-839 (42 SE 242) (1902). Accordingly, we find an issue exists whether MARTA was obligated to use the means available, i.e., the switch plate, to protect its riders from the danger of injury such as Rouse suffered. Although one charged with exercising ordinary diligence might not be required to install a comb plate switch, we find that, because they are charged with extraordinary diligence, a question of fact is raised by MARTA and Millar's failure to install such a switch which is specifically designed to avoid the type of injury that Rouse received.

The dissent relies upon *Darlington Corp. v. Finch*, 113 Ga. App. 825, 827-828 (149 SE2d 861) (1966), for the proposition that MARTA was not obligated to add this safety feature. *Darlington* is inconsistent with the precedent it relies upon and should be overruled. The part of the statement from *Darlington* that the dissent quotes is a quotation in *Darlington* from *Emory Univ. v. Porter*, 103 Ga. App. 752, 755 (120 SE2d 668) (1966). *Emory Univ. v. Porter*, however, was not a case involving extraordinary diligence. Indeed, *Emory Univ. v. Porter* makes that very clear:

A hospital owes to its patients *only the duty of exercising ordinary care* to furnish equipment and facilities reasonably suited to the uses intended and such as are in general use under the same, or similar, circumstances in hospitals in the area. [Cit.] It is not required to furnish the latest or best appliances, or to incorporate in existing equipment the latest inventions or improvements even though such devices may make the equipment safer to use.

(Emphasis supplied.) Id. at 755. Of course, *Darlington*, as a case involving a malfunctioning elevator, was a case in which the duty of extraordinary care was required, and, therefore, should not have relied upon precedent from an ordinary care case. *Davis v. Augusta Factory*, 92 Ga. 712, 713 (18 SE 974) (1893), which *Darlington* and the dissent also quote, is also a case that involved factory machinery and also was a case in which the defendant was not required to exercise extraordinary care. Under these circumstances, *Darlington* must be overruled.

Further, the dissent cannot choose to disregard Rouse's testimony that the part was missing from the escalator. Although MARTA's witnesses testified that no parts were missing on the escalator, this merely creates an issue of fact that a jury must decide. On motions for summary judgment, the court cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When the contradiction by witnesses is on a relevant and material issue, it is error to grant a motion for summary judgment. *Raven v. Dodd's Auto Sales & Svc.*, 117 Ga. App. 416, 422 (160 SE2d 633) (1968).

Accordingly, we find that the trial court erred by granting summary judgment to MARTA and Millar.

*Judgment reversed. Blackburn, P. J., Eldridge, Miller, Ellington, Phipps and Adams, JJ., concur. Mikell, J., concurs in judgment only. Smith, C. J., Andrews, P. J., Johnson, P. J., and Ruffin, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

I respectfully dissent.

Leslie Rouse suffered a foot injury when the toes on one of her feet were entrapped at the bottom of an escalator she was descending at a transit station owned and operated by the Metropolitan Atlanta Rapid Transit Authority (MARTA). Rouse sued MARTA and Millar Elevator Service Company (which maintained the escalators at the station under a contract with MARTA) claiming that MARTA negligently failed to keep the escalator in a safe condition for its passengers and that Millar negligently failed to carry out its contractual duties to maintain and repair the escalator. The trial court granted summary judgment in favor of the defendants and Rouse appealed.

Because escalators and other mechanical devices sometimes get out of working order and cause injury without negligence on the part of anyone, Rouse cannot rely on the doctrine of res ipsa loquitur to establish a presumption of negligence arising solely from the fact that her foot was entrapped in the escalator; rather she must produce evidence to support her allegations that negligence by the defendants in the maintenance or repair of the escalator caused her injury. *Sparks v. MARTA*, 223 Ga. App. 768, 770 (478 SE2d 923) (1996); *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 457-458 (475 SE2d 188) (1996). MARTA is not an insurer of its passengers' safety while using escalators; it is, however, held to the elevated standard of care applicable to common carriers — the duty to exercise extraordinary diligence to protect the lives and persons of its passengers. *Sparks*, 223 Ga. App. at 768. Moreover, MARTA cannot avoid this duty by contracting with a third party, such as Millar, to maintain and repair the escalator. *Gaffney v. EQK Realty Investors*, 213 Ga. App.

653, 655 (445 SE2d 771) (1994). When the duty to exercise extraordinary diligence is imposed, only slight negligence need be shown. Id. As to the standard of care imposed on Millar in its capacity as the escalator servicer, we have at least impliedly held that more than ordinary care is required because "such a standard would be heightened due to the risk of injury posed to those traveling on an escalator." *O'Shields*, 222 Ga. App. at 458.

Even assuming Millar is held to the same extraordinary diligence standard applicable to MARTA, there is nothing in the present record showing even slight negligence by MARTA or Millar sufficient to establish a violation of the standard of care. Rouse alleged in her complaint that the defendants negligently operated the escalator with a gap at the bottom of the escalator that allowed her foot to become entrapped under the teeth of an escalator part known as a comb plate located where passengers step off the escalator. Rouse testified at her deposition that she was wearing canvas-type shoes and that, as she attempted to step off the escalator, her shoe got caught and was pulled under the comb plate up to her toes. However, Rouse also testified that she did not see any sort of gap at the bottom of the escalator, and there was no other evidence that the escalator was otherwise out of repair or was being operated with an improper gap at the comb plate. Furthermore, there is no evidence in the record that MARTA or Millar failed to inspect, maintain, or repair the escalator at issue and, other than the incident itself, no evidence that the escalator malfunctioned.

The evidence showed that a Millar mechanic performed regularly scheduled maintenance on the escalators every month and that the monthly maintenance was performed on the escalator at issue 13 days prior to Rouse's accident. The mechanic deposed that, when he performed the monthly maintenance, there were no parts on the escalator requiring repair at that time and no other problems with the operation of the escalator. Other evidence showed that all the escalators at the MARTA station were observed on a daily basis by a Millar mechanic for possible problems and that no problems were reported on the escalator at issue in the days leading up to the accident. About seven days prior to the accident, another Millar mechanic performed repair work on the escalator at issue which included replacement of a lower comb plate. The repair work was re-checked four days prior to the accident to confirm that the comb plate was functioning properly. The mechanic who performed the repair also confirmed that on a daily basis he rode and visually inspected the escalators, including checking the comb plates to insure they were functioning properly, and that his daily inspections leading up to the accident revealed no problems with the escalator at issue. The mechanic who performed the monthly maintenance on the

escalator deposed that on the day of the accident a few hours prior to the accident, he visually examined the escalator at issue, looked at the comb plates, and traveled up and down the escalator, and that he saw no malfunctions at that time.

Rouse's testimony that she thought a yellow plastic flap that covered the comb plate was missing from the escalator was not sufficient to create an issue of fact with regard to her claim that the defendants negligently maintained or repaired the escalator. The defendants provided expert testimony from a trained and experienced escalator mechanic that no such flap has ever existed as a part covering comb plates on the escalator at issue or on other escalators. Moreover, the same expert mechanic testified that he arrived at the scene of the accident while Rouse's foot was still entrapped under the comb plate and that the escalator was not missing any parts. Rouse's lay testimony was not sufficient to create a factual issue in the face of expert testimony from an escalator mechanic that no such part existed on the escalator and that, at the time of the accident, the escalator was not missing any parts. Whether or not a particular mechanical part exists in the machinery of an escalator involves specialized expert knowledge possessed by those with appropriate education or training, and is not within the ken of laypersons with no such education or training. *Harrell v. Lusk*, 263 Ga. 895, 896-897 (439 SE2d 896) (1994); *Sorrow v. Seloff*, 177 Ga. App. 87-88 (338 SE2d 482) (1985) (expert testimony that absence of protective part on machinery was not apparent to layperson without mechanical expertise).

Rouse also claimed that an affidavit from a cousin who was with her at the time of the accident created an issue of fact. The cousin stated that, when she heard Rouse scream, she rushed down the escalator and saw that Rouse's foot was entrapped at the bottom of the escalator. She stated that "[w]hile people were trying to stop the escalator and get her foot out, I noticed the escalator was chipped and cracked." At best, this attempts to provide circumstantial evidence in support of Rouse's claim that negligent maintenance or repair of the escalator caused the accident. When a party relies on inferences from circumstantial evidence to prove a claim, the inferences must not only in some proximate degree tend to establish the conclusion sought, they must also render less probable all inconsistent conclusions. *Page v. Atlanta Center Ltd.*, 219 Ga. App. 422, 424 (465 SE2d 456) (1995). A mere inconclusive inference, or one that raises only a mere conjecture as to the conclusion sought, is not a reasonable inference sufficient to create an issue of fact. *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 781 (257 SE2d 186) (1979). The defendants provided evidence that they properly inspected, maintained, and repaired the escalator, and that the escalator was functioning properly on the day of the accident a few hours before it occurred. In light

of this evidence, a nonspecific reference to chips or cracks somewhere on the escalator is not sufficient to support a reasonable inference that the accident at issue was caused by negligent maintenance or repair of the escalator. This evidence does not render less probable the conclusion that the accident was caused by either a sudden mechanical malfunction or an inherent risk in the use of the escalator that was not the proximate result of any negligence by the defendants.

It follows that, because there was an absence of evidence in the record that the accident was caused by any negligent failure of the defendants to maintain or repair the escalator, the trial court properly granted summary judgment to MARTA and Millar. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

The majority finds that an issue of fact remains as to whether the duty to exercise extraordinary diligence would have required the defendants to add a safety feature to the escalator which was not a part of its original design. During the deposition of a former Millar mechanic, the mechanic was questioned by Rouse about the existence of a safety feature, known as a comb plate impact switch, which had been incorporated into the design of escalators manufactured after the escalator model at issue. According to the mechanic, a comb plate impact switch is designed to cut off the escalator when a certain amount of force is exerted against a comb plate. The mechanic testified that the code applicable to the escalator does not require that comb plate impact switches be installed on older escalators as part of regular maintenance and repair, but that the code does require installation of the switches when improvements or upgrades are made to existing escalators. The record shows that the escalator at issue is a Westinghouse model originally installed at the MARTA station when the station was constructed in about 1980. There is no evidence in the record that any type of improvements or upgrades have been made to the escalator which would have required the addition of the comb plate impact switch under the applicable code.

This case does not involve a claim that the escalator at issue was defectively designed when it was manufactured. Rather, Rouse's complaint alleged that the defendants negligently failed to maintain or repair the escalator as it was designed. The defendants moved for and were granted summary judgment on this issue. In response to the motion for summary judgment, Rouse argued that there was evidence sufficient to show that the defendants negligently maintained or repaired the escalator as it was designed. Rouse did not allege in her complaint, nor did she argue in response to summary judgment, that the defendants had a duty to add a safety feature to make the escalator safer than its original design. Even though Rouse questioned a mechanic at a deposition about the existence of a safety

feature which could have been added to the escalator, she never raised this issue in her pleadings and the trial court never ruled on it.

Accordingly, the majority's conclusion that a factual issue remains on this claim is erroneous for two reasons. First, the claim that the defendants failed to add the safety feature was not raised or ruled upon in the trial court, so it presents nothing for appellate review. *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389) (2002).

> The purpose behind summary judgment is to dispose of litigation expeditiously and avoid useless time and expense to go through a jury trial. This purpose is thwarted when a party may withhold meritorious legal arguments until appeal. Allowing a party to raise new arguments also ignores the duties and responsibilities placed on the parties by OCGA § 9-11-56. Each party has a duty to present his best case on a motion for summary judgment. This Court has specifically held that, in responding to a motion for summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case. The same burden is placed on the parties with regard to factual issues. As we held in *Lau's Corp. v. Haskins*, once a defendant points out that there is an absence of evidence to support the plaintiff's case, the burden then shifts to the plaintiff, who must point to specific evidence giving rise to a triable issue. Additionally, our appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. If the rule were otherwise, a party opposing a motion for summary judgment need not raise any legal issue, spend the next year thinking up and researching additional issues for the appellate court to address, and require the opposing party to address those issues within the narrow time frame of appellate practice rules.

(Punctuation and footnotes omitted.) Id. at 828-829.

Second, even if this claim had been properly raised below, it has no merit. As to Millar, there is no evidence in the record that its maintenance contract with MARTA included a responsibility to add

safety features to the existing design of the escalator. Moreover, contrary to the majority's finding, the duty to exercise extraordinary care in the maintenance or operation of the escalator did not include a duty to add a safety feature which was not a part of the escalator's original design. *Darlington Corp. v. Finch*, 113 Ga. App. 825, 827-828 (149 SE2d 861) (1966).

> [O]ne is not required to furnish the latest or best appliances, or to incorporate in existing equipment the latest inventions or improvements even though such devices may make the equipment safer to use. An appliance is not defective by reason of the failure to have incorporated therein the latest improvement or invention developed for its use. It is not incumbent upon persons or corporations using machinery in the prosecution of their business to procure the very best and safest machinery which can possibly be made. It is sufficient if the machinery is of a kind in general use, and reasonably safe for all persons who operate it with ordinary care and diligence.

(Citations and punctuation omitted.) Id. Since the escalator at issue met these standards, the failure to add a safety feature to make the escalator safer than its original design cannot be considered negligent under the applicable standard of care.

By overruling *Finch*, the majority places upon MARTA and similarly situated buyers of nondefective products a duty not only to keep the products as designed in safe working order, but also a post-sale duty to stay constantly informed of technical advances in product design and manufacturing and to incorporate those advances into previously purchased products to make them safer. Although manufacturers have a post-sale or continuing duty to warn of defective products after they have been manufactured and sold if the manufacturer knows or reasonably should know that a product has been sold with a dangerous defect, the duty is premised on the manufacturer's product expertise which enables it to learn of defects and devise corrections. *Chrysler Corp. v. Batten*, 264 Ga. 723, 724-725 (450 SE2d 208) (1994); Thorpe, Venderbush, and Neal, Ga. Products Liability, 3rd ed., § 8-7, Post-sale duty to warn. The effect of the majority opinion is to place an even more expansive duty on buyers, even if there is no evidence the product was defectively designed, and even though buyers lack the expertise of manufacturers. The majority places an impossible burden on MARTA and similarly situated buyers and makes MARTA a virtual insurer of passenger safety.

I am authorized to state that Chief Judge Smith, Presiding Judge Johnson, and Presiding Judge Ruffin join in this dissent.

*Hinton & Powell, Andrew J. Hinton, Jr.*, for appellant.
*Lokey & Smith, Malcolm Smith, Kevin A. Doyle*, for appellees.