S04G1389. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY et al. v. ROUSE.

(612 SE2d 308)

THOMPSON, Justice.

We granted a writ of certiorari to the Court of Appeals in *Rouse v. Metropolitan Atlanta Rapid Transit Auth.*, 266 Ga. App. 619 (597 SE2d 650) (2004), and posed this question: Does the requirement that common carriers exercise "extraordinary diligence to protect the lives and persons of their passengers" impose a duty upon those carriers to stay informed of safety advances in product design and to buy and incorporate those safety advances into previously-purchased, non-defective products?

Leslie Rouse was injured when her foot became entrapped under the comb plate of an escalator in the Five Points MARTA rail station in Atlanta. She filed a negligence action in Fulton County Superior Court, naming as defendants MARTA and Millar Elevator Service Company, which had the contract to maintain the escalator. The trial court granted summary judgment in favor of defendants finding no evidence that defendants "knew or should have known of any alleged malfunction of the escalator." Rouse appealed. The Court of Appeals, in a divided opinion, reversed the grant of summary judgment. *Rouse*, supra. The majority concluded that a question of fact existed as to whether MARTA was obligated to add an optional safety feature (a comb plate impact switch which would automatically stop an escalator if an object becomes caught as it approaches the comb plate), not required by code to be retrofitted to older escalators, in order to fulfill its duty of extraordinary care. This holding required the Court of Appeals to overrule *Darlington Corp. v. Finch*, 113 Ga. App. 825 (149 SE2d 861) (1966), which held that "extraordinary" care did not necessarily impose a duty to add optional safety features.

1. A carrier of passengers, such as MARTA, must use extraordinary diligence to protect the lives and persons of its passengers. OCGA § 46-9-132; *Sparks v. Metropolitan Atlanta Rapid Transit Auth.*, 223 Ga. App. 768 (1) (478 SE2d 923) (1996); *Millar Elevator Svc. Co. v. O'Shields*, 222 Ga. App. 456, 458 (2) (475 SE2d 188) (1996). Extraordinary diligence is defined as "that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances." OCGA § 51-1-3. See also *Southeastern*

*Stages v. Stringer,* 263 Ga. 641 (437 SE2d 315) (1993); *East Tenn. &c. R. Co. v. Green,* 95 Ga. 736, 737 (22 SE 658) (1895).

In *Savannah, F. & W. R. Co. v. Boyle,* 115 Ga. 836, 838-839 (42 SE 242) (1902), this Court expounded upon the duty of extraordinary care owed by a common carrier to its passengers in a case involving an assault on a passenger by third parties:

> [W]hen the circumstances are such that a person in the exercise of that degree of diligence known to the law as extraordinary care would see, or should apprehend, that the passenger is in danger of insult or injury; and when the circumstances were such that the employees in charge of the train, in the exercise of the degree of diligence above referred to, should have foreseen that an insult or injury was to be reasonably apprehended, and failed or refused to use the means at hand to protect the passenger therefrom, the railway company is liable to the passenger for any damages he sustains as a consequence of such failure or refusal. The general rule would seem to be that whenever a carrier, through its agents or servants, knows or has opportunity to know of a threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, the carrier is liable. . . . Knowledge of the passenger's danger, or of facts and circumstances from which that danger may reasonably be inferred, is necessary to fix the carrier's liability in this class of cases. The law now seems to be well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger; but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make his passenger's journey safe and comfortable.

(Citations and punctuation omitted.)

Relying on the foregoing language, the Court of Appeals concluded that "because [common carriers] are charged with extraordinary diligence, a question of fact is raised by MARTA and Millar's failure to install such a switch which is specifically designed to avoid the type of injury that Rouse received." *Rouse,* supra at 623.

*Boyle,* however, is a general statement of the law regarding the duty of extraordinary care as applied to common carriers. Two years following *Boyle,* this Court decided *Alabama Midland R. Co. v. Guilford,* 119 Ga. 523 (46 SE 655) (1904). Although technically dicta,

particular language in *Guilford* sheds considerable light on the present case through its discussion regarding the equipment that is required for use by a common carrier.

In *Guilford*, supra at 526, the plaintiff sued the railway company for personal injuries. The trial court charged the jury as follows:

> You will then determine whether the evidence shows that the defendant company did have and was maintaining a good headlight on that night — one that was up to date — the most approved pattern in use up to that time. If you find that they have shown that, then you would not be authorized to find a verdict for the plaintiff on that ground.

(Punctuation omitted.) The Court concluded that this charge was inaccurate, explaining that

> [t]he defendant *was* required to use a headlight that was up to the standard of those in *general use* and *well suited* for the purposes for which it was intended; and it was *not necessary*, in order to relieve it, that it should show that the headlight used on the occasion of the plaintiff's injuries was of "the *most approved pattern* in use up to that time."

(Emphasis supplied.) Id.

The *Darlington* case involved injury to a passenger on an elevator, and the court considered the use of safety devices by the elevator operator as it relates to the operator's duty to exercise extraordinary care. The *Darlington* court concluded that:

> [O]ne is not required to furnish the latest or best appliances, or to incorporate in existing equipment the latest inventions or improvements even though such devices may make the equipment safer to use. An appliance is not defective by reason of the failure to have incorporated therein the latest improvement or invention developed for its use. It is not incumbent upon persons or corporations using machinery in the prosecution of their business to procure the very best and safest machinery which can possibly be made. It is sufficient if the machinery is of a kind in general use, and reasonably safe for all persons who operate it with ordinary care and diligence.

(Citations and punctuation omitted.) Id. at 827. In order to take a contrary position in *Rouse*, supra, the Court of Appeals was required to overrule *Darlington*. It did so on the basis that *Darlington* relied

upon cases involving ordinary care, whereas extraordinary care is the proper standard here. While that may be true, see *Emory Univ. v. Porter*, 103 Ga. App. 752 (2) (120 SE2d 668) (1961), the court failed to recognize that the holding in *Darlington* is entirely consistent with our ruling in *Guilford* in that a defendant charged with extraordinary care is not necessarily required to utilize the newest and safest equipment to escape liability. To hold otherwise would essentially force all common carriers, in the exercise of extraordinary care, to be "an insurer of his passenger's safety against every possible source of danger," a standard we have consistently declined to impose. *Boyle*, supra at 839; *Southeastern Stages v. Stringer*, supra.

Other jurisdictions have reached similar conclusions with regard to a common carrier's obligation to supply the "latest and best" devices in situations requiring greater than ordinary care. For example, in *Otis Elevator Co. v. Embert*, 198 Md. 585, 596 (84 A2d 876) (1951), the Maryland Court of Appeals declined to " 'predicate negligence upon the mere failure to provide the most modern equipment, in the absence of any evidence that the equipment was defective or inadequate.' " Further, in a case nearly identical to ours, the District Court for the District of Columbia concluded that "[the transit authority] does not have a duty to design and build a subway system that is completely accident-proof, nor is [the transit authority] required to constantly improve its subway system by incorporating every new safety device that may become available." (Citations omitted.) *Jones v. Washington Metropolitan Area Transit Auth.*, 742 FSupp. 24, 26 (D. D.C. 1990) (plaintiff's foot trapped in escalator).

While some jurisdictions seem to indicate that a common carrier is required to make use of the "latest and best" devices, a close reading of these cases reveals that this requirement contains a qualification, namely that of being in general practical use. For example, the Supreme Court of Pennsylvania stated:

> An elevator owner must keep pace with science, art and modern improvements in appliances; his duty to his passengers is to provide and make use of the best and most approved machinery and devices *in general practical use* for the safety of passengers.

(Citations omitted; emphasis supplied.) *Strobel v. Park*, 292 Pa. 200, 205 (140 A 877) (1927). See also *Sabiston's Adm'r v. Otis Elevator Co.*, 251 Ky. 222, 228 (64 SW2d 588) (1933) (elevator owner is "bound to provide and use the best and most improved machinery in general, practical use," citing *Strobel*, supra); *Treadwell v. Whittier*, 80 Cal. 574, 600 (22 P 266) (1889) (elevator owner "must adopt such inventions as . . . to combine the greatest safety with practical use; yet . . .

the law excuses them from seeking and applying every new invention"); *Smith v. The Odd Fellows Bldg. Assn.*, 46 Nev. 48, 55 (205 P 796) (1922) (upholding jury instructions that elevator operator is "bound to avail himself of . . . inventions and improvements . . . whenever the ability of such improvements has been thoroughly tested and demonstrated, and . . . is within his power, so as to be reasonably practicable").

Based upon the foregoing authority and reasoning, we hold that a common carrier, in exercising extraordinary care, must stay informed of safety advances in product design, but is not held to a *per se* rule that requires those carriers to buy and incorporate those safety advances into previously-purchased, non-defective products. The carrier need not necessarily utilize " 'the most approved pattern in use up to that time.' " *Guilford*, supra at 526. The Court of Appeals erred in reaching a contrary conclusion in *Rouse*, supra, and in overruling *Darlington v. Finch*, supra, which we hereby reinstate. Accordingly, we remand to the Court of Appeals for consideration of the case in light of our holding herein.

2. Elevator Specialists, Inc., filed an amicus curiae brief arguing an issue not expressly decided by the Court of Appeals in this case, nor raised by the parties to this action. "[A]micus curiae has no right to except to the rulings of the court or to prosecute a writ of error since he is not a party or privy, or in any way aggrieved by the judgment." (Punctuation omitted.) *Douglas v. Trust Co. of Ga.*, 147 Ga. 724 (95 SE 219) (1918) (per curiam). As such, we decline to address the additional "enumeration of error" asserted by amicus curiae.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED APRIL 26, 2005 —
RECONSIDERATION DENIED MAY 23, 2005.

*Lokey, Mobley & Doyle, G. Melton Mobley, Kevin A. Doyle*, for appellants.

*Andrew J. Hinton, Jr., Sobell & Foy, David M. Sobell, John M. Foy*, for appellee.

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Charles E. Hoffecker*, amici curiae.