[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-12341
_____

D. C. Docket No. 02-02725-CV-GET-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 5, 2005
THOMAS K. KAHN
CLERK

JOHN L. PIECHOTA,

Plaintiff-Appellant,

versus

MARRIOTT INTERNATIONAL, INC.,
d.b.a. Atlanta Marriott Marquis,
OTIS ELEVATOR COMPANY,
HMA REALTY LIMITED PARTNERSHIP,
d.b.a. Atlanta Marriott Marquis,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 5, 2005)

Before EDMONDSON, Chief Judge, TJOFLAT and KRAVITCH, Circuit Judges.


PER CURIAM:

Plaintiff-Appellant Piechota appeals the grant of summary judgment to Defendants-Appellees Marriott International, Inc. ("Marriott"), and Otis Elevator Co. ("Otis"). After reviewing the record and having the benefit of oral argument, we affirm the district court.

BACKGROUND

This case is based on an incident at an Atlanta hotel on 17 October 2000. We take the facts most favorable to Piechota, the nonmovant. Piechota was ascending an escalator when he tripped and fell over something near the top. Piechota cannot recall if he hit the ground. He says that he fell when he tried to avoid an exposed piece of plywood, and he presumes that he fell over a three-quarters of an inch raised portion of metal at the top of the escalator (the skid pad). Piechota says he did not see raised portion before tripping over it. After the incident, Piechota returned to his room and called the operator to inform Marriott of his accident. Hotel security escorted Piechota back to the escalator where he observed someone repairing the top of the escalator by removing the protrusion.[1]

---

[1] At his deposition, Piechota testified that an Otis employee repaired the escalator. On appeal, he suggests that the repairman was a Marriott employee.

In his complaint, Piechota claimed that the trip severely damaged his knee, causing physical injuries and suffering. The district court granted defendants' motions for summary judgment on 8 April 2004.

DISCUSSION

We review the grant of summary judgment de novo and construe all inferences in favor of the nonmoving party, Piechota. Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1304 (11th Cir. 2003). Georgia law controls, so we must decide this case as the Georgia Supreme Court would. Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004).

Piechota alleges that Marriott was negligent in failing to see, warn of and repair the raised escalator platform. He asserts that Otis is also negligent for not repairing the platform and for causing the defect by improperly replacing the platform during its most recent inspection, eight days prior to the accident.

When an escalator causes an injury, Georgia law requires that the escalator be placed out of service until a state authority can inspect it. O.C.G.A. § 8-2-106(c). The Georgia Court of Appeals concluded that a violation of this statute is a form of spoliation, which warrants a rebuttable presumption that the evidence

3

spoliated would have been harmful to the spoliator.  Lane v. Montgomery

Elevator Co., 484 S.E.2d 249, 251 (Ga. App. 1997).

Even though Marriott denies anyone repaired the escalator, we must resolve

disputes in Piechota's favor.  Accordingly, the spoliation charge applies to

Piechota's claim against Marriott and we presume that the allegedly hazardous

condition (the raised platform) existed for those purposes.[2]  Nothing evidences

that Otis repaired the escalator platform, so no spoliation charge would apply to

Piechota's claims against Otis.

As the operator of the escalator, Marriott owed Piechota a duty of

extraordinary care in certain situations.  MARTA v. Rouse, No. S04G1389, 2005

WL 950014 at *1 (Ga. Apr. 26. 2005).  Georgia courts are less explicit when

defining the standard applicable to service operators such as Otis.  At a minimum

it is "heightened" ordinary care.  Millar Elevator Serv. Co. v. O'Shields, 475

S.E.2d 188, 191 (Ga. Ct. App. 1996).  Recent authority treats this "heightened"

standard as extraordinary care.  Rouse v. MARTA, 597 S.E.2d 650, 653-54 (Ga.

Ct. App. 2004) rev'd by MARTA v. Rouse, 2005 WL 950014 at *4 (not expressly

---

[2]    Evidence of a hazardous condition does not establish liability: Georgia does not provide for strict liability in escalator and elevator cases.  Peterson Props. Corp. v. Finch, 508 S.E.2d 463, 464-65 (Ga. Ct. App. 1998) (citing Ellis v. Sears Rowebuck & Co., 388 S.E.2d 920 (Ga. Ct. App. 1989).

deciding whether service operators owe a duty of extraordinary care).  This heightened standard is of little utility here, because it seems limited to cases about conducting more thorough investigations.  O'Shields, 475 S.E.2d at 458.  Piechota does not challenge (even without expert testimony) the investigatory plan: as opposed to its execution.

Piechota must first show that Defendants had superior knowledge of the defective condition.  Peterson Props. Corp. v. Finch, 508 S.E.2d 463, 465 (Ga. Ct. App. 1998).  Piechota cannot establish any of Defendants' employees had actual knowledge of the condition.  At his deposition, Piechota could not recall seeing any of either Defendants' employees in the area of the escalator when he walked onto, ascended and exited the escalator.  Without a showing of actual knowledge, Piechota must demonstrate that Defendants' employees should have "discovered [the condition] in the exercise of ordinary diligence." Mayhue v. Middle Ga. Coliseum Auth., 559 S.E.2d 488, 490 (Ga. Ct. App. 2002).

We agree with the trial court that Marriott's preventative measures foreclose a conclusion of liability on these facts.  Piechota does not dispute that Marriott inspected the area every five to fifteen minutes.  Georgia courts have considered a five to fifteen minute window reasonable as a matter of law.  Bolton v. Wal-Mart Stores, Inc., 570 S.E.2d 643, 645 (Ga. Ct. App. 2002).  A reasonable inspection

process "may be sufficient to support summary adjudication as a matter of law where [as in this case] there is no evidence of employees in the vicinity." Dix v. Kroger Co., 570 S.E.2d 89, 90 (Ga. Ct. App. 2002). In addition, Piechota offers no expert testimony challenging Marriott's inspection procedures. Compare id. at 90 (concluding that the adequacy of inspection procedures are jury questions). Thus, Georgia law supports the district court's conclusion that Piechota's claims can not survive summary judgment.[3]

Likewise, Otis is entitled to summary judgment. First, it cannot be said that an Otis employee caused the defect. While Piechota asks this Court to "infer" the condition was created by an Otis employee who mistakenly replaced the skid pad, we cannot. Piechota's own evidence suggests that a Marriott employee repaired the escalator after his fall. This fact suggests that Otis did not have exclusive control of the skid pad. Accordingly, res ipsa loquitur does not apply. See Ken Thomas of Ga., Inc. v. Halim, 597 S.E.2d 615, 618 (Ga. Ct. App. 2004) (permitting res ipsa loquitur when, among other things, the instrumentality causing the injury is "within the exclusive control of the defendant").

---

[3] Piechota's other attempts to establish negligence -- through contract and general "do not cause harm" theories of liability -- should be rejected for the same reasons discussed above: ordinary negligence applies.

Second, Piechota's "conjecture . . . is not sufficient to raise an issue of fact in light of direct evidence" of a service schedule. Medders v. Kroger Co., 572 S.E.2d 386, 388 (Ga. Ct. App. 2002) (discussing direct evidence that person was scanning for hazards). Here evidence exists of a service schedule. Otis employees visually inspected the escalators daily and conducted physical inspections at least monthly. The last physical inspection occurred on 9 October 2000, eight days before Piechota's incident. Beyond causation, we also recognize that Otis had no knowledge of the allegedly hazardous condition and agree with the district court that Otis's service regimen falls within ordinary care.

Last, Piechota relies on surveys by a consulting firm to establish past knowledge of negligence. While these reports do indicate prior problems with the escalators, by August 1999 those issues were resolved. Accordingly, the decision of the district court is affirmed.


AFFIRMED.